Wallis v. Johnson School Township.

No. 9366.

WALLIS v. JOHNSON SCHOOL TOWNSHIP.

TOWNSHIP TRUSTEE.—*Promissory Note.*—*Corporation.*—*Contract.*—Where a promissory note, set forth in the complaint in an action thereon against a school township, appears upon its face to be the note of the corporation, that is, it is signed by the township trustee, as trustee, is payable out of the township funds, the consideration moved to the township, and it appears the note was intended to impose an obligation upon the township, the contract should be regarded as that of the corporation, and not that of the officer whose name is signed to it.

SAME.—*Authority to Borrow Money.*—*School Law.*—*Statute Construed.*—*Case Distinguished.*—Under the provisions of the school law, 1 R. S. 1876, p. 778, a township trustee has no authority to borrow money for the use of the school township. *Bicknell* v. *Widner School Township*, 73 Ind. 501, distinguished.

SAME.—*Promissory Note.*—*Complaint.*— A township trustee has no authority to borrow money for the use of his school township, but where money is thus borrowed, and actually and rightfully expended for the benefit of the school corporation, it is liable therefor; and a complaint in an action on a promissory note executed by a township trustee for money so borrowed, which fails to allege that the money was expended for the benefit of the school corporation, is insufficient.

CORPORATIONS.—*Right to Borrow Money.*—As a general rule, a corporation, either public or private, has an implied power to borrow money for objects expressly authorized by the statute by which it was created and endowed with corporate powers and privileges, but, if such power is expressly or by implication denied by such statute, then no such power exists.

From the Gibson Circuit Court.

*J. E. McCullough* and *L. C. Embree*, for appellant.
*C. A. Buskirk*, for appellee.

ELLIOTT, J.—The questions which require our consideration arise upon the error alleged upon the ruling sustaining appellee's demurrer to the third paragraph of appellant's complaint.

The paragraph under mention alleges that the trustee of Johnson township represented to the appellant that he was in need of money for the purpose of purchasing fuel to be used in the school houses of the township, and for the payment of salaries due to teachers; that the trustee also rep-

resented that there was no money belonging to the school funds in his hands, with which to pay teachers or buy fuel; that the trustee asked of the appellant a loan for the said township for the purpose of obtaining money to pay for fuel and to discharge the indebtedness of the school township to the teachers; that the appellant did lend to said township five hundred dollars, and received from the said trustee a promissory note of the township, of which the following is a copy:

"$500. JAN'Y 6th, 1879.

"June 20th after date I promise to pay to the order of James Wallis five hundred dollars, to be paid out of the township funds, and five per cent. attorney's fees, negotiable and payable at June 20th, 1879, without any relief whatever from valuation or appraisement laws, for value received, with interest at ten per cent. per annum from date, and ten per cent. per annum after maturity until paid.

"FRED. K. MONROE,

"Trustee of Johnson Tp."

It is not, however, alleged that the township did not have funds in the trustee's hands with which to pay teachers and buy fuel, nor is it alleged that the money obtained by the trustee from appellant was used in paying for fuel, or in discharge of the indebtedness to teachers.

It is a familiar rule, that a corporation having authority to incur an indebtedness may evidence such indebtedness by a promissory note, bill of exchange, or in any other form usually adopted by natural persons in like cases, unless the charter or statute contains some provision to the contrary. Under this general and settled rule, a school corporation, having power to create an indebtedness, would have, as a necessary incident to the principal power, the right to evidence such indebtedness by any of the usual forms of evidences of indebtedness. This court has expressly held that a promissory note may be properly executed for a debt which

the corporate officers have authority to incur.   *School Township of Monticello* v. *Kendall*, 72 Ind. 91; *Sheffield School Township* v. *Andress*, 56 Ind. 157.

The note set forth in the complaint appears, upon its face, to be the promissory note of the township. Taking the provision, "to be paid out of the township funds," found in the body of the instrument, in conjunction with the descriptive words annexed to Monroe's name, the contract may fairly be deemed to be that of the township, and not the individual undertaking of Frederick K. Monroe. Where it appears that the consideration moved to the township, and also further appears, from the whole instrument, that it was intended to impose an obligation upon the township, there can be no doubt that the contract should be regarded as that of the corporation, and not as that of the officer whose name is signed to it.   *McKenzie* v. *The Board, etc.,* 72 Ind. 189; *Sheffield School Township* v. *Andress, supra.*

The complaint does not bring the case within *Bicknell* v. *Widner School Township*, 73 Ind. 501, for it does not show that the money obtained from the appellant was expended for the benefit of the school corporation. In that case it was held, not that the township trustee had power to borrow money for the school township, but that, where the money borrowed was actually used in paying for a school house, the township was liable, as "for money had and received, which was applied to the lawful use of the township." We have no doubt that, where the money obtained by the trustee is actually and rightfully expended for the township, and so expended as to yield the township the full benefit, there is a liability.

In this case, we find facing us this question : Has the township trustee authority to borrow money for the school township? In *Sheffield School Township* v. *Andress, supra,* it was held that, where a township trustee had actually incurred a debt which he had authority to incur, he might rightfully execute the note of the township in payment, but

that case is by no means authority for appellant's position, that the trustee has authority to borrow money. Nor does the case of *Harney* v. *Wooden*, 30 Ind. 178, lend the appellant's argument much support, for holding, as that case does, that the trustees may employ teachers in anticipation of the actual collection of taxes, is very far from deciding that money may be borrowed by the trustee. To employ teachers, or to build school houses, and create a liability against a school township therefor, is essentially different from obtaining loans upon the faith of the township's liability to repay.

It is a well settled general rule, that corporations, either public or private, have an implied power to borrow money for objects expressly authorized by the statute by which they were created and endowed with corporate powers and privileges. While the general rule is as stated, it is nevertheless true that, if the authority to borrow money is expressly or by implication denied by the statute which created the corporation, then no such power exists. This conclusion follows from the broad general rule, everywhere recognized, that corporations possess only such powers as the statute, in express words, or by necessary implication, confers. We are, therefore, to look to the statute which created the school corporations of our State, and determine whether the power to borrow money is expressly or impliedly conferred.

There is no express authority to borrow money delegated to the school officers; this much is clear. It is also clear that the school officers are not expressly authorized to create any indebtedness at all, although, as appears from the cases heretofore cited, the implied power to create an indebtedness for property purchased does exist.

Section 4 of the school law declares that each civil township shall constitute a municipal corporation for school purposes, and confides the management and control of the affairs of the school corporation to the township trustee.

Section 7 provides, *inter alia*, that the trustee shall receive and pay out the special school revenue and also the revenue for tuition appropriated to his township, and shall pay out the same for the purposes for which such revenues were collected and apportioned.

Section 10 in express words places the trustee in charge of all the educational affairs of the township, and empowers him to employ teachers, and to build and furnish school houses.

These provisions do undoubtedly confer broad and comprehensive powers upon township trustees, and were there no restrictive provisions we should be compelled to hold that, with this broad grant of express powers, there was coupled the incidental one of borrowing money. We think, however, that there are restrictive provisions which, fairly construed, must be held to deny the authority to negotiate loans. In section 6 it is provided that the county auditor, in fixing the penalty of the bond of trustees, "shall see to their sufficiency to secure the school revenues which may come into their hands." There is here a clear implication that the only money which a trustee can officially receive is that yielded by the school revenues. Money obtained by borrowing cannot be said to be school revenue. If an action were brought upon the trustee's bond, and the only breach shown should be the misappropriation of money obtained by borrowing it, it is clear that the action would fail, for the reason that the penalty of the bond extends only to money received from the school revenues. The sources from which the school revenues are derived are created and defined by law, and it is from these sources only that the trustee has a right to secure money for school purposes. Again, section 7 requires that the trustee shall make an annual report, in which he must show, first, the amount of special school revenue, and of school revenue for tuition, on hand at the commencement of the year then ending; second, the amount of each kind of revenue received within the year, giving the

amount of tuition revenue received at each semi-annual apportionment thereof; third, the amount of each kind of revenue paid out within the year; fourth, the amount of each kind of revenue on hand. The sources from which the trustees are to obtain funds are here clearly defined, and the only sources from which the money can be rightfully received are the school revenues. There is no provision for reporting, or accounting for, borrowed money, or for accounting for money drawn from any other source than the school revenue. So, in section 8, it is provided that the trustee shall keep a record, including "accounts of all receipts and expenditures of school revenue," distinguishing between the special school revenue and the tuition revenue. Here again we have expressed the intention manifested in the sections before referred to, that the trustees shall obtain money for school purposes from the school revenues, and from no other source.

Section 21 requires the trustee to make a financial report to the county superintendent, and requires that he shall report and account for money received from the school revenues.

Section 22 imposes a penalty for a failure to make the report as prescribed in sections 7 and 21; and as the only receipts which either of these sections requires the trustee to report are such as he acquires from the school revenues, it is plain that no penalty attaches to a failure to give any account of money borrowed. The reason there is no such penalty manifestly is, that the statute does not confer authority to negotiate loans. As no authority is conferred to procure money by making loans, there was no necessity for requiring an account of money so procured, and no reason for affixing a penalty for a failure to account for and report it; whereas, if the Legislature had intended to confer authority to borrow money, it is obvious that a report of it would have been required and a penalty affixed for a failure to make the proper accounting.

Section 2 provides the source from which the tuition fund flows, and section 12 provides how the special fund shall be created. There is nothing in the statute from first to last, indicating that a township trustee can rightfully obtain money from any other source than the school revenues. There is a plain and unmistakable purpose on the part of the Legislature to confine the trustee to the funds expressly provided, and not permit him to go out into the business world as a borrower. There is great wisdom in confining the expenditure of money to that supplied through the channels defined by statute, for if it be once conceded that the right to acquire and expend money not thus derived exists, then there is no limitation or restriction save only that it be borrowed for authorized corporate purposes. We can not think that it was ever intended that township trustees should borrow money without other limitation or restriction than that it should be for authorized and legitimate school purposes. We are strengthened in our conclusion by reference to statutes conferring power to borrow money upon city and town councils, and upon county officers; for in all such cases the authority is always hedged and guarded by careful and salutary restrictions and limitations. Granted the authority to borrow money, the right to determine when and how much shall be borrowed must be left to the unrestricted discretion of the trustee. This, we are confident, is a result which the Legislature never intended should follow from the grant of power to the trustee of the township.

The school corporations of our State are peculiar ones. The township trustee is clothed with almost autocratic power in all school matters; the voters and taxpayers of the township have but little, if indeed any, voice or part in the control of the details of educational affairs. So far as actual authority is concerned, the trustee is the corporation, although in contemplation of law it is otherwise. It is, there-

fore, all the more important that to the great powers with which he is expressly vested should not be added the dangerous one of the almost unrestricted right to borrow money.

Analogies drawn from rules applied to money corporations fail to be of force when applied to the school corporations of Indiana, for the resemblance which gives force to analogy is wanting. School corporations are not created for the purpose of acquiring property, but for the purpose of furnishing the children of the State with the means of education. They are not organized for the purpose of obtaining funds when and how the officers may elect, but for the purpose of receiving the money expressly provided by law, and of disbursing it for the purposes and in the manner the law directs. The money is provided; the officers have but to reach out and take it from the appointed depositaries; they have no right to attempt to secure money from any other place. The money is supplied to them, and they must take it as supplied, and not attempt to devise or create other sources of supply. The school authorities are not bound to furnish educational facilities beyond those which the funds, devoted by law to that purpose, will yield. It is not for them to burden the school township with debt by borrowing money. Their duty is fully performed and their power completely exhausted when they have properly expended all money derived from the school revenues.

We are without a brief from the appellee, and it may be that we have overlooked important considerations which ought to be stated in support of the judgment appealed from.

Judgment affirmed, at the costs of the appellant.