Union School Township v. First National Bank of Crawfordsville.

———————

No. 10,288.

UNION SCHOOL TOWNSHIP v. FIRST NATIONAL BANK OF CRAWFORDSVILLE.

SCHOOL CORPORATION.—Promissory Note.—Bank.—Deposits.—Where the trustee of a school corporation executes promissory notes in the name of the corporation, deposits the money in his own name, and draws it out upon checks signed by himself as an individual, he becomes the creditor of the bank for such deposits, and the transaction is one between the bank and its depositor.

SAME.—Authority of Trustee to Borrow Money.—The trustee of a school cor-

poration has no authority to borrow money and execute promissory notes therefor in the name of the corporation.

SAME.—*Liability of Corporation.—Subrogation.*—Where the school trustee borrows money and executes notes therefor in the name of the school corporation, the corporation will be liable if the money is actually used for the payment of legitimate claims against the corporation, and the circumstances are such as make it equitable that the lender should be subrogated to the rights of the persons whose claims the borrowed money paid.

SAME.—*No Liability where Trustee has School Funds in his Hands.*—Where the trustee has money in his hands derived from the school revenues or funds, the lender of money can not be subrogated to the rights of the persons holding claims against the school corporation.

SAME.—*Authority of School Trustee Statutory.—Duty of Persons Dealing with Him to Ascertain the Extent of his Authority.*—A school corporation is one of very limited powers; the authority of the trustee is purely statutory, and all who deal with him must, at their peril, ascertain the extent of his authority.

SAME.—*Estoppel.—Public and Private Corporations.*—There is an essential difference between public and private corporations, for the officers of the former, exercising statutory powers, can not bind the corporation by estoppel where the acts relied upon as creating the estoppel are beyond the scope of the authority vested in such officers.

RES ADJUDICATA.—*Decision on Former Appeal.*—The general rule is that a decision on appeal governs the case throughout all its subsequent stages, but this rule does not apply to merely incidental or collateral questions; it applies to such questions only as were presented for decision, and were decided as essential to a just disposition of the pending appeal.

SUPREME COURT.—*Practice.—Evidence.*—The Supreme Court will not weigh conflicting evidence, but will accept that deemed credible by the trial court, and will apply the law to the facts established by such evidence.

SAME.—*Petition for Rehearing.*—Points not made on the original argument will not be considered on the petition for a rehearing.

From the Montgomery Circuit Court.

*E. C. Snyder* and *M. W. Bruner,* for appellant.

*G. W. Paul, J. E. Humphries, J. R. Coffroth* and *T. A. Stuart,* for appellee.

ELLIOTT, J.—John R. Robinson was the legally-acting trustee of Union township from February 15th, 1873, to October, 1876; the public moneys, or the greater part thereof, received by him during that period were deposited by him

with the First National Bank, the appellee, from time to time as they were received by him, and were by the officers of the bank placed to the credit of Robinson on the books of the bank; in keeping the accounts the bank made no entries show-- ing the fund or funds of the township to which the deposit belonged; and it had no knowledge as to what fund the deposit did belong. During the period above mentioned John. R. Robinson, as trustee of Union township, borrowed from the bank, for the use of the township, the sum of $30,000,. and, after deducting discount at 10 per cent. per annum for the time the several loans were to run, the bank passed to the credit of Robinson, on her books, the residue, and paid the money out on the individual checks of Robinson. It paid in the same manner the money deposited by Robinson which he received of the revenues of the township, and there was nothing on the face of the checks to show for what purpose the money was paid; whether it was on a claim due from the township, civil or school, or the individual debt of John R. Robinson, was not disclosed. At the time each loan was made to Robinson by the bank a note was executed by him, signed Union township, John R. Robinson, trustee; and the money so borrowed, less the discount, was passed to his credit on the books of the bank, and was by the bank paid out on the checks drawn by him. At the time each loan was made there was retained by the bank a certain sum as discount or interest in advance, which discount or interest was computed at the rate of 10 per cent. per annum, and the whole amount so retained was $683.86. Many of the loans were not paid at maturity,. but were renewed from time to time, and the bank charged interest on the same at the rate of 10 per cent. per annum,. and the whole amount of interest so paid by Robinson to the bank was $2,325.60, and the interest on the renewals if com- puted at 6 per cent. would have been $1,295.36. There was paid out of the sums so borrowed, on account of the legiti- mate expenses due from the township tuition fund, the sum of $20,695.11. This sum was paid out by the bank on the

checks of John R. Robinson to various persons to whom the school township was indebted for services performed for the school township; and at the time the money was borrowed and the payments made Robinson, had no other money than that borrowed with which to pay the indebtedness; and at the time the loans were so made the bank thought that it was loaning the money to Union township, and no credit was given to John R. Robinson as an individual. Robinson, during his term of office as trustee of Union township, received public funds belonging to the tuition fund of Union school township aggregating the sum of $34,806.78, and expended on account of debts chargeable to that fund the sum of $30,085.88, leaving a balance of tuition fund unexpended of $4,718.15; and at no time during his term of office were the funds belonging to the tuition fund of the township exhausted on account of the expenses properly payable out of that fund. There was paid by the bank, out of the money borrowed by Robinson, on account of other debts due from the school township, the further sum of $6,375.66, for building, repairing and furnishing school-houses in said township; and these amounts were due from the township at the time they were paid, and Robinson had no other money on hand with which to pay them except the borrowed money. Robinson, while trustee, received of public moneys belonging to the special school fund of said township the sum of $18,370, and paid debts due from that fund to the amount of $24,327.60, thus overdrawing the fund in the sum of $5,956.80. Robinson paid the bank at various times on account of the loans made to him by the bank, the sum of $20,700, and payments were made out of the money received by him belonging to the several township funds. Robinson never charged himself, in any of the settlements he made with the county commissioners, nor on his books, with any of the sums by him borrowed of the bank, but he asked and obtained credit for the discounts and interest paid by reason of said loans.

The ultimate conclusion from these facts is, that the trans-

actions between the bank and Robinson were had with him as an individual, and not with him as the trustee of the school township. All the money received from the notes purported to be executed by him as school trustee, as well as all money received from school revenues, was deposited to his individual credit, and all money was paid out upon his individual checks. The fact that some of the money was derived from notes executed by him as school trustee does not weaken our conclusion, for the reason that the notes were not valid. It has been decided after careful investigation, that a township trustee has no authority to borrow money or to execute notes in the name of the school township. *Bicknell* v. *Widner School Tp.*, 73 Ind. 501; *Wallis* v. *Johnson School Tp.*, 75 Ind. 368; *First Nat'l Bank* v. *Union School Tp.*, 73 Ind. 361; *Pine Civil Tp.* v. *Huber M'f'g Co.*, 83 Ind. 121; *Reeve School Tp.* v. *Dodson*, 98 Ind. 497. When this case was here before it was said that the court erred in sustaining the demurrer to the sixth paragraph of the complaint, " not," to quote the language there used, " because of the note therein set forth, but because it shows that the moneys so borrowed, for the purpose of paying the corporate indebtedness, the appellee did apply to the payment thereof." *First Nat'l Bank* v. *Union School Tp.*, *supra*. It is manifest, therefore, that the execution of the notes did not bind the school corporation, and the only ground upon which it can be maintained with the faintest color of plausibility that the transactions were had with the school corporation, and not with Robinson as an individual, is, that the money was borrowed for the purpose of paying a legitimate debt of the corporation and was actually applied to that purpose. But even this color of plausibility fades away when it is brought to mind that the money received on the notes was placed to the individual credit of Robinson, was paid out upon his individual checks without inquiring whether it went to pay a corporate claim or not, and was paid out when the corporation had money of its own in the hands of its trustee. These are all

important facts, but the last is of controlling force, for, if the corporation had money, then the trustee had no authority to obtain money from other sources to pay claims. When money was supplied from the public revenues, it was the duty of the trustee to use it in paying claims against the school corporation, and he had no authority to procure money from other sources and thus create a debt against the corporation. With school funds in his hands, he had not the slightest right to borrow money or create a debt. As he created no debt against the school township, and did not deal with the bank in his official capacity, it must look to him, and not to the school township, whose special agent he was.

There was a single account, and that account was with the individual; it was not with the school corporation. As Robinson had no authority to execute the notes as trustee, the corporation was not bound, and, therefore, the only ground upon which a claim against the school corporation could be made to stand would be that the bank had a just account against it; but this ground does not exist, for the plain reason that the only account the bank ever had was against Robinson as an individual. There can be no mistake as to this. The money from all sources went to Robinson's credit; it was paid out upon his individual checks; it was paid out indiscriminately as he drew for it in the course of his individual business and upon township claims, and was paid without knowledge of the specific purpose to which it was to be applied. It would be unjust to allow the bank to veer from its course and seize the money of the school corporation to pay an account due from an individual. It did not, until the end of the transactions, treat the money as received for school purposes; on the contrary it credited all money received to the individual. It did not appropriate the money to the payment of claims against the school corporation, but did appropriate it to the use of its depositor, John R. Robinson. It paid nobody but this depositor; it honored his checks because he was its depositor. It did not pay claim-

ants; it only paid his checks. It reduced its indebtedness to no one except its creditor and depositor. There is neither an equitable nor a legal ground upon which the bank can found a claim to recover against the school corporation as for money paid for its use and benefit. The entire course of business and all the facts combine to show that the money was paid to Robinson upon his individual checks. Not a dollar was paid for the use or benefit of anybody else. From first to last Robinson was its debtor for the money advanced on the notes, and was its creditor throughout for the money placed to his credit as a depositor. In every instance the money was paid out upon his checks because he was a depositor with a balance to his credit, and was not paid in any instance because the claim was against the school corporation. It was not asked that it be specifically paid on corporate claims, nor was it borrowed for that specific purpose.

Robinson did not, in legal contemplation, appropriate the money received from the notes purporting to be executed by the school township to school purposes; he deposited it in a general way to his own credit, and so the bank received it. It was at all times subject to his check, for whatever purpose he desired to use it. There was no setting apart of the money in any form, nor was there any distinction in the use made of it, or in the form of the checks which called it from the vaults of the bank. It never became a specific corporate fund, nor was it ever specifically set apart to corporate purposes.

The trustee, in the management of the financial affairs of the school township, is a special agent, with limited statutory powers. He has no general authority to bind the corporation. His acts create a binding obligation against the school township only when he does the acts which the law authorizes, and does them in the manner which it prescribes. All who deal with him are bound to take notice of the scope of his authority. *Reeve School Tp.* v. *Dodson, supra; Pine Civil Tp.* v. *Huber, etc., Co., supra; Axt* v. *Jackson School Tp.,* 90 Ind. 101. The bank could not, therefore, be ignorant of the

authority of Robinson in any case, much less in such a case as this, where it had such wide knowledge of the material facts. Nothing that Robinson could do in excess of his statutory authority could bind the township by estoppel or otherwise. The court said, in *Axt* v. *Jackson School Tp., supra:* " In dealing with such trustee, the appellant was bound to take notice of his fiduciary character, and to know that he could only bind his township by his words and deeds, which were authorized by law." It was not in Robinson's power by checks, notes, or other instruments, to bind the school corporation unless the claim for which they were given existed against the township, and in this case no claim did exist. Even if the trustee had been guilty of fraud, the school corporation would not have been bound. *Lowell Five Cents Savings B'k* v. *Inhabitants of Winchester,* 8 Allen, 109; *Benoit* v. *Inhabitants of Conway,* 10 Allen, 528; *Dickinson* v. *Inhabitants of Conway,* 12 Allen, 487; *Kelley* v. *Lindsey,* 7 Gray, 287; *Railroad Nat'l Bank* v. *City of Lowell,* 109 Mass. 214.

It is clear that the school corporation can not be held responsible because of any acts done by the trustee in borrowing money and executing notes in the name of the school township; if responsible at all, it must be for some other reason, as such acts were in excess of his authority and entirely destitute of force as against the school corporation.

It is only in cases where there is a necessity for borrowing money, and where equity requires that the lender should be subrogated to the rights of the creditor whose debt was paid with the lender's money, that the school corporation is held liable. In this instance both these elements are wanting. There was no necessity for borrowing money, for the public revenues had supplied all that was needed. There is no equity, first, because the lender was bound to take notice of the extent of the authority of the trustee, and this imposed upon it the duty of ascertaining whether the public had supplied the needed funds; second, because the money lent was paid out upon the individual checks of the bank's depositor in the

usual course of business, and without making any definite appropriation to any specific claim against the school township.

The principle that a decision on appeal governs the case throughout all its subsequent stages we fully recognize, but we do not understand it to be what appellee's counsel assert. In our judgment a decision rendered on appeal does not conclusively determine merely incidental or collateral questions, but determines only such questions as are presented for decision and are decided as essential to a just disposition of the pending appeal. The decision upon the sufficiency of a complaint does not determine the questions which subsequently arise on the evidence, unless such questions are in all material respects substantially the same as those presented by the evidence. But if counsel were right in affirming that the decision on the former appeal decides this case, they are radically wrong in their conclusion that it decides it in their favor. What that case does decide is, that the notes are void as against the school corporation, but that the sixth paragraph of the complaint was good because it averred that the money was borrowed for the purpose of paying the corporate indebtedness, and was actually applied to that purpose. The evidence is very far from showing such a case. It shows that there was really no corporate indebtedness, because the trustee had corporate funds, and shows, also, that the money was not, in contemplation of law, borrowed for the purpose of paying a corporate debt, and was not definitely appropriated to that purpose. It shows the contrary of what appellee asserts; for it shows that the only disposition made of the money was first to give credit to the depositor and then to pay it out, like all other money deposited, upon his individual checks in the ordinary course of business 'and without any definite appropriation to any specific purpose    The only debtor or creditor the bank ever had was Robinson, for it knew no one else and could not hold the corporation upon the void notes. A lender of money can not, after a course of dealing with an individual, change front and claim that he dealt with the cor-

poration of which the individual was the special agent with naked statutory powers. In such a case, the agent who exceeds his powers may, in some cases, bind himself, but the corporation he can not bind. *Ballou* v. *Talbott*, 16 Mass. 461; *Potts* v. *Henderson*, 2 Ind. 327; *McHenry* v. *Duffield*, 7 Blackf. 41; *Johnson* v. *City of Indianapolis*, 16 Ind. 227.

It is true, as counsel assert, that there is no special finding, because the finding purporting to be one is not signed by the judge. We can not, therefore, decide the case upon what professes to be the special finding.

The evidence is in the record, and the motion for a new trial is in proper form, and we decide the case upon the ruling denying that motion. Appellee's counsel do, it is true, assume that there is a special finding, and mainly argue the case upon that erroneous assumption, but they have not waived the errors assigned upon the ruling on the motion for a new trial. In the concluding clause of their brief they refer to the specification of error founded on the ruling denying that motion and say: "As to the alleged error of the court in overruling the motion for a new trial, it would be uselessly trenching upon the time and patience of the court to argue it at length. It must be apparent to the court that the argument would necessarily be a recapitulation of what has already been said."

Judgment reversed, with instructions to grant a new trial.

Filed Jan. 27, 1885.

## On Petition for a Rehearing.

ELLIOTT, J.—We have again given the questions in this case careful consideration, and the result is that we are strengthened in the conviction that our conclusions heretofore announced were right,

We are clear that the trustee of a school corporation is a special agent of very limited authority. Not only is he a special agent, but he is also one whose authority is only such as a public statute confers upon him. This our decisions have

often affirmed, as appears from the cases cited in our former opinion. That this conclusion is a just one can not be doubted by one who considers the nature of a school corporation and the character of the authority of its agent, the trustee. The corporation is itself organized for a limited and local purpose. it is not a corporation with general powers; it has neither the general power to contract debts nor to buy property. Its power is to conduct the local school affairs, and to do this with the money derived from the revenues set apart for school purposes. There is, in strictness, no power in the corporation to obtain or to expend money derived from any other source than the school revenues. *Wallis* v. *Johnson School Tp.*, 75 Ind. 368. Thus is the power of the corporation itself circumscribed, and its agent, the trustee, can by no possibility possess authority that is not possessed by his principal. It is perfectly obvious, therefore, that one who deals with a school trustee must, at his peril, ascertain that the trustee is acting within his authority. It is incumbent upon a person seeking to hold the corporation liable for a debt created by the trustee in the name of the corporation, to affirmatively show that it was one he had authority to incur. In this case this essential fact does not appear; for we think it too clear for argument, that where the trustee has funds of the corporation in his hands, he can not plunge it into debt. It is his duty, and his duty bounds and limits his authority, to apply the money of the corporation to payment for articles purchased for the corporation, and not to go into bank and borrow money in the name of the corporation. This the bank was bound to know, and it could not avoid knowing that at the time it lent money on the notes signed by its depositor as school trustee, he had school funds in his hands, for this information public records and the law made known. It was its duty to know that there were no school funds in his hands before it advanced him money. It follows from what we have said that, conceding that the money furnished Robinson was put in his hands by the bank to pay claims against the school

township, still there can be no recovery; but this is a concession not justified, for the money was placed directly to the credit of Robinson as an individual, and was so drawn from the bank by him. The money, therefore, was paid to Robinson directly, and went to his benefit as a depositor of the bank.

It needs no argument to prove that the school corporation, with no power to obtain money except from the public revenues set apart for that purpose, ought not to be charged with interest on money borrowed by its special agent when he has funds of the corporation in his hands supplied from the proper source. The law contemplates no such procedure. It is his duty to disburse the funds entrusted to him, and not to impose the burden of a debt upon the corporation.

It is true, that we have held that where the money received on notes executed in the name of the school corporation goes to pay for property received by it, the person advancing the money will be subrogated to the claim of the person who actually furnished the property, but we have steadily held that it is only in cases where the school corporation actually received the property purchased, that subrogation can take place. It is well known that subrogation arises, not by contract, but by force of equitable principles, and only in cases where good conscience requires that it should take place in order to prevent injustice. In this instance there is an entire absence of equity in the plaintiff. It can not be claimed with any tincture of reason, that the creditor of a special agent, with restricted and plainly defined statutory powers, can have an equity against a principal who has placed money in the hands of such an agent to pay all claims.

The evidence does tend to show, as claimed by counsel, that Robinson had no public money to his credit on the books of the bank, but this is very far from showing that he was not provided with funds from the public revenues. The question is not what money he had in bank, but what money of the public did he have in his hands?

There are, perhaps, some items which it is shown were paid

on legitimate claims, and paid on the checks of Robinson as an individual to the holders of these claims; this, however, does not make out a case, for the facts still remain that Robinson was furnished with public money, and that all money obtained on the notes executed by him as trustee went to his individual credit. These facts lie across the road to a recovery. The bank did a general business with Robinson as an individual, and lent him money without proper inquiry as to his authority to execute the notes of the school township, and it can not recover without other evidence than that adduced.

It is a mistake to suppose that the school corporation was estopped by the statement of Robinson. He was not the corporation; he was merely its agent, and that, too, with limited statutory powers. *City of Valparaiso* v. *Gardner,* 97 Ind. 1 (49 Am. R. 416); *Strosser* v. *City of Ft. Wayne,* 100 Ind. 443, see page 449; *Axt* v. *Jackson School Tp.,* 90 Ind. 101; *Reeve School Tp.* v. *Dodson,* 98 Ind. 497.

It is a fundamental principle that a governmental corporation is not estopped by the act of an officer in cases where the act is beyond the scope of his authority.

Public corporations stand on an essentially different ground from private ones, and the rules which apply to the one class do not apply to the other in cases where the doctrine of *ultra vires* is invoked. *Driftwood Valley T. P. Co.* v. *Board, etc.,* 72 Ind. 226; *Cummins* v. *City of Seymour,* 79 Ind. 491, see page 497 (41 Am. R. 618). But the power of a school corporation is much more limited than ordinary public corporations, for there is no general power to incur debts or execute evidences of indebtedness, and, certainly, no such power exists where the school trustee is provided with money from the school revenues. The school corporation is, in truth, one of unusually limited powers, for the only source from which it can derive money is the school fund, or school revenues, and, strictly speaking, its only power is to receive and disburse the funds allotted to it. The authorities cited, in

cases of actions against private corporations, are not applicable to public governmental corporations such as school townships.

We said, in our former opinion, that Robinson did not borrow the money for the specific purpose of paying claims against the corporation, and this we repeat after again reading the evidence. The money borrowed did go to Robinson as an individual, and the bank became his debtor for that money as its depositor. There is no evidence that the money was borrowed to pay any specific claim; on the contrary, it was placed to his credit and was held subject to his general check as an individual.

We said that no claim existed against the school corporation, and we were right. Where the school trustee has money of the corporation in his hands there can be no claim created by him by borrowing money. This the lender of money is, as the authorities cited abundantly establish, bound to know.

Counsel say that the question of the right to a new trial was not argued, but in this they are in error. We copied in our former opinion an extract from the brief of counsel for the appellant, showing that they did press this question. It is true they did not argue it at length, but they did make the question squarely. Their argument was mainly upon what the face of the record showed to be a duly signed special finding; but to have again argued the question on the motion for a new trial would have been to simply repeat what had been before fully and elaborately urged. The special finding, as it appears on the face of the record, seems to have been duly signed; but in return to a *certiorari* the original finding was sent to us, and from that it appears that there was no signature. Under such circumstances, it would be rank injustice to declare that there was no brief.

We acted upon the evidence deemed credible by the trial court, and this, as has many times been decided, is the rule of this court. *Gathright* v. *Burke,* 101 Ind. 590; *Julian* v. *Western U. Tel. Co.,* 98 Ind. 327; *Cain* v. *Goda,* 94 Ind. 555;

*Arnold* v. *Wilt*, 86 Ind. 367.   We did not depart from the long established rule that we will not weigh evidence, but we took the evidence before us and found that in law it was not sufficient to entitle the appellee to a recovery.   We simply applied the law to the evidence, and, as matter of law, decided that there could be no recovery.

Some technical objections are presented in the brief on the petition for a rehearing, but, under well settled rules, these come too late.

Petition overruled.

Filed Sept. 15, 1885.