JOHN W. TWISS v. THE CITY OF PORT HURON AND BENJAMIN J. KARRER, TREASURER,

AND

ANNA MARIA WALSH v. SAME DEFENDANTS.

*Municipal corporations—Contracts for public improvements—Withdrawal of bid—Approval of resolutions by mayor.*

1. Where a city charter required all contracts for public improvements to be let to the lowest bidder, and *one* of *four* bidders on a grading and paving job, whose bid was the *lowest*, was allowed to withdraw the same on the ground of an alleged mistake in amount, and the contract was awarded to the *next lowest* bidder, without readvertisement,—

   *Held*, illegal, and that such readvertisement should have been ordered by the council, which had no *power* to deprive the city,

and the parties who would be assessed, of the benefit of a letting to the *lowest* bidder.

2. The charter of the city of Port Huron declares that every resolution, before taking effect, shall be presented by the clerk to the mayor, which, on his approval, evidenced by a written indorsement thereof, shall go into effect.

   *Held,* that such approval cannot be deemed non-essential, and that a resolution of the common council providing for the grading and paving of a city street, not submitted to the mayor for his approval, was *invalid.*

Appeals from St. Clair. (Stickney, J., presiding.) Argued July 15, 1886. Decided November 11, 1886.

Bills filed to set aside assessments. Complainants appeal. Decree dismissing bills reversed, and one entered holding proceedings void. The facts are stated in the opinions.

*Avery Brothers,* for complainants.

*Charles K. Dodge* and *S. W. Vance,* for defendants.

CAMPBELL, C. J. Both of these cases are suits in equity to relieve the respective complainants from the burden of illegal assessments. The court below, which was the circuit court for the county of St. Clair, dismissed the bills, and complainants appealed.

The assessments are complained of on various grounds, some relating to the invalidity of the proceedings of the common council of Port Huron, and some to injurious irregularities.

The assessments were for grading and paving a long street in Port Huron, which was divided into two districts by the resolution, and there is some reason to think the division produced some effects that were material; but, as we think some more important questions will dispose of the controversy, we shall not advert further to this.

Under the charter of Port Huron, no street can be paved unless on a petition signed by the owners of a majority of

the frontage by feet front. In 1882, upon what was claimed to have been such a petition, order was made, and a contract let to one John Hoffman, to pave a part of the street. These proceedings were abandoned as illegal, and became in law as if never taken.

In June, 1883, upon the fourth of that month, a petition was presented to the council, now claimed to have been signed by a sufficient number of land-owners. Two of these owners were induced to sign the petition, which they did not wish to sign, by pecuniary inducements,—one, by such inducements on the part of Hoffman, the contractor; and one, by a promise by an alderman to pay part of his assessments.

At the same meeting this petition was referred to the city engineer, to report whether a majority of owners had signed the petition. He immediately filed a written report stating that they had. At once, and without further ceremony, it was referred to the superintendent of public works to examine, and report estimates and specifications, with such recommendations as he should deem expedient, and he was authorized to call on the city engineer for such assistance or information as he deemed expedient. He, on the spot, filed a written report, that, pursuant to these instructions, he had examined the avenue, and regarded the grading, paving, and curbing as a necessary public improvement, and recommended immediate action, with a view to its completion during the season. In the same report he filed and adopted the engineer's specifications for the work, which, instead of putting the whole street on the same footing, contained an estimate of one part at 24 feet wide, and one part at 35 feet wide, making the cost per foot front in one $1.21, and in the other $1.70. With this was the engineer's report, containing a long and full body of specifications.

Resolutions were at once passed, reciting the various references and reports, and ordering the work done, creating the two assessment districts mentioned, directing advertisement

for proposals, and directing the assessment payable in four installments.

These resolutions were not submitted to the mayor for his approval. The advertising was at once had, and the council met on June 11, 1883, just one week after the petition was presented and the resolutions passed.

At this meeting, on June 11, the superintendent of public works submitted three bids: One from T. S. Skinner, at 23 and 25 cents per cubic yard for excavating in the two several districts, and 75 and 78 cents a square yard for paving. P. W. Ashley bid at 18 and 22 cents per cubic yard excavation, and 73 cents a square yard for paving. John Hoffman bid at 24 cents a cubic yard for excavating, and 65 cents a square yard for paving. Charles Grieb had bid at 59⅜ cents a square yard for paving, and was unquestionably the lowest bidder; but at this meeting he told the council his man had made a mistake in putting 59⅜ for 69⅜, and asked leave to withdraw his bid. This was allowed, and the contract awarded to Hoffman, as the lowest bidder.

The testimony shows pretty plainly that Grieb and Hoffman were in collusion, and knew of each other's bids, and were each other's bondsmen, and were to work together in the matter, and that Hoffman was privy to the withdrawal of Grieb's bid.

Whether the common council knew of this collusion we need not inquire. The superintendent of public works, in whose hands all the bids were placed, and who knew what securities were filed, and whose report should have been prepared before the meeting, makes no reference in that report to Grieb's bid at all. The charter expressly requires contracts to be let to the lowest bidder. Hoffman was not the lowest bidder. Assuming that Grieb could be lawfully relieved from his bid on such a showing as he made, unsupported by his own oath or that of his man, that would not change the fact that his bid was lower than Hoffman's, or justify disregarding

it without a new bidding. Hoffman's testimony, however, shows that Grieb's bid was not made by mistake, but was understood to have been made lower than Hoffman's, so that, if Mr. Skinner bid between them, the job might be secured by it. Whether the council knew or did not know these facts is unimportant. They had no power to deprive the city, and the parties who would be assessed, of the benefit of a letting to the lowest bidder. It should have been advertised over again, and the other bidders might have revised their bids.

These resolutions were also void for non-submission to the mayor. The charter (chap. 10, § 11) declares that every resolution, before taking effect, shall "be presented by the clerk to the mayor. If the mayor approve thereof, he shall thereon write his approval, with the date thereof, and sign the same; and thereupon such ordinance, resolution, or proceeding shall go into effect." He is required to return his objections, if not signing, to the next regular meeting, when, on reconsideration, it requires a vote by yeas and nays, of two-thirds of the members elect, to repass it.

The charter is express that the resolution must be submitted to the mayor, for approval or disapproval, in the same way, substantially, that a statute must be to the governor. In the present instance the resolution was at once acted on, without further ceremony, and the contract let on bids made before the next meeting.

It is impossible to hold such provisions non-essential. This whole subject was revised in 1879. Local Acts 1879, No. 408. By the charter the mayor presides, if present, but his absence in no way prevents the transaction of business. He has no vote except in case of a tie, and has no voice in the business except as chairman. The provisions for his separate approval are all contained in this revising statute, and these very sections were revised. Local Acts 1879, p. 278.

The resolutions under which the business was done were therefore invalid.

We are not concerned on this hearing with the equities of any but the complainants, and we need not in their case consider any of the minor questions, when the jurisdictional requisites, as well as a lawful letting to the lowest bidder, are absent.

The proceedings, as to the complainants, must be held void, and the decrees below reversed, with costs of both courts, and the defendants be perpetually enjoined, as prayed.

CHAMPLIN and MORSE, JJ., concurred.

SHERWOOD, J. (*dissenting*). I do not agree with my brethren as to the facts established by the record in this case, nor as to the equitable principles which should control its disposition in this Court. The bill is filed against the city of Port Huron, and its treasurer, Benjamin J. Karrer, to perpetually enjoin the collection of a special assessment against the complainant, levied upon his property under the charter and ordinances of the city, to pay what has been determined to be his ratable proportion of the costs and expense of paving Pine Grove avenue, a street therein, and remove from complainant's property the apparent cloud thereon created by the assessment.

The street is one of the main thoroughfares in the city of Port Huron, and the complainant's property consists of three parcels, lying on the avenue,—two on the west and one on the south side of the same.

The complainant, by his bill, shows and avers that, at the time the same was filed, the common council of the city, in 1883, caused proceedings to be had and taken which resulted in the pavement of Pine Grove avenue, including that portion in front of the complainant's three parcels; that the council has declared an assessment on the lots fronting upon the street for the purpose of raising the money to pay the expenses of the pavement, and that his portion thereof, as determined, is $511.80 in all, and that one-fourth of the

same is now claimed to be due and payable, and the treasurer threatens, with warrant in hand, if not paid by complainant, to sell or lease the property against which the assessment stands, to satisfy the same; that the assessment is not a valid charge either against complainant or his property; that there was no petition of a majority of the owners of the property per foot front, of the avenue proposed to be paved, laid before the council asking for such pavement, before the order for paving was made; that the petition was not signed by a majority of such owners; that three of the owners' names were placed to the petition by persons having no authority so to do; that there were two assessment districts designated, and that in district No. 2 the owners of a majority of the frontage did not appear on the face of the petition; that members of the council were engaged in getting up the petition, and soliciting owners of property to be affected by it to sign the same; that the pavement was not desired by the residents, or required by owners of property thereon, but by merchants and business men of the city; that some members of the common council raised a fund, by subscription, to hire persons on the avenue owning property thereon to sign the petition for the pavement; and that a majority of the council, at the time the petition was acted upon, were aware of such facts.

The bill further avers that, on the receipt of the petition for the pavement by the common council, the improvement was authorized, and provision made for carrying it forward by several resolutions, with undue haste, and that the mayor never approved, or indorsed his approval, of the resolutions; that the construction of the work was advertised but three days before it was let to one Grieb, he being the lowest bidder, at 59⅘ cents per square yard; that Grieb claimed his man who made the bid made a mistake in putting in his bid, and was permitted to withdraw the same, and the contract was subsequently made for paving the avenue with Mr. Hoff-

man, a contractor at Port Huron; and that such agreement was a corrupt one.

The bill further avers the council had no power to divide the avenue into two paving districts, and no authority to make two assessment rolls, one for each district; and it further avers that the complainant's property is of such a shape on the street front that the assessment per foot is unequal and unjust; that certain frontage on the avenue is not assessed at all; that certain portions of the avenue, at street crossings, were paved at the expense of the city, which should have been charged to lot-owners, and in some cases portions have been charged to lot-owners which should have been charged to the city; and that the Grand Trunk Railway Company was not assessed at all.

The bill also avers that the work of paving was poorly done; that defective material was used; that the superintendent of public works of the city had full knowledge of the defective manner in which the paving was done, and the matter was frequently brought to the attention of the council, but they accepted the pavement thus defectively made; and that the tax so illegally assessed is a lien upon the premises of the complainant.

The defendants make answer to the bill of complaint, and say that the city authorized the pavement of the avenue in the fall of 1883; that the complainant's three lots front thereon as claimed; that the council made an assessment thereon for complainant's ratable share of the expense, and that the city is about to enforce the collection against the lots; and aver that the amount assessed is a valid charge against the land.

They further aver that the petition was signed by the required number, representing the amount of property necessary upon the front, before any steps were taken towards authorizing the pavement to be made, and that no names went upon the petition unauthorized by the owners of the

property represented. They deny that any of the board, or a majority of them, did anything unlawful, or that a majority of its members had knowledge of any such conduct, or that the common council was interested in any public improvements in any other way than to discharge its duty to the public.

The answer further avers that the resolutions under which the pavement was authorized, and the work carried on, were signed and approved by the mayor upon the records of the council's proceedings, and that was the manner in which all resolutions of the council were approved by the mayor. They deny that there was anything wrong or collusive in the letting of the contract for the work on the part of the city, or that the council knew anything of the kind.

They aver that the owners of a majority of the property per foot fronting on the avenue did sign the petition for the pavement, and that, when the work was ordered to be done, the assessment was made, in accordance with the requirements of the statute, per foot frontage. They deny that any injustice has been done the complainant, or that any discrimination has been used in favor of or against any of the property assessed, or that any mistake was made in the assessment at the street crossing.

And they aver the Grand Trunk Railway owns no property on the street liable to assessment for the pavement; that, if any such want of assessment occurred, it could not prejudice the complainant, for the property claimed to be owned by said road, and liable to assessment, was assessed to the city, and complainant cannot be heard upon that ground.

They aver also that the pavement was well made; that the contract made therefor was in all things properly complied with; and without any fraud, collusion, or other wrongful act by the superintendent of public works or common council of the city, the same was duly accepted.

And they further aver and claim that the signatures to the

petition were procured by the owners of property fronting on the avenue who were desirous of having it paved; that the common council authorized the pavement, relying upon the request of such owners therefor, as expressed in the petition, and believed the same to be a necessary public improvement; that the complainant lived on the avenue, on lots fronting the same, during all the time the proceedings were had culminating in ordering the pavement, and while it was being made, and had full knowledge of them all; that the proceedings of the council in relation to the improvement were printed, from time to time, as they occurred, in the official paper of the city; that the assessment roll was made out, and by the city's engineer published four weeks, asking and notifying all persons interested to make their objections to the assessment, if they had any, and file them in writing, as required by the charter; that neither said complainant, nor any other person, made any objection thereto, and the assessment was then perfected as required by law; that the complainant not only knew of the assessment of his property aforesaid, but saw all the work done, and as it was being done, knew of the contract under which it was done, and knew that the contractor relied upon said assessment, and the money to be raised thereon, for his pay, and made no protest or objection to anything that was said or done in the premises, until asked for the tax assessed against his property, and then filed the bill in this case; and they insist complainant has no just or equitable ground upon which to resist the payment of his assessment.

The usual replication was filed, and a large amount of testimony was taken.

The cause was heard before Judge Stickney, upon the pleadings and proofs, and he caused a decree to be entered dismissing the bill, and complainant appeals.

The first objection of complainant is to the sufficiency of the petition.

The petition, we think, was sufficient to authorize proper

proceedings thereon by the common council. It was signed by the owners of a majority of the property per foot of the frontage which it was proposed to pave. This is all the statute requires upon that point.

In estimating the frontage to be represented by the petition, it is not proper to include street crossings, or any property the title to which is in the city. The consent of the city as to such portions is sufficiently expressed when it authorizes the pavement to be made.

The city may pave such portions of any street crossing in the city without any petition of citizens for that purpose, or make or repair the same in any other way it may deem proper and best. The claim is made that some of the petitioners' names were signed without authority by the persons who did it. The persons' names who made the signatures appear on the petition, and the signatures purport to be by them, and not by the signers; but both these signatures, if without authority at the time, could not alone affect the result, because there was a sufficient number without them. But it is claimed that signatures of two others were illegally obtained, and, without these added, enough frontage would not be presented to authorize the council to act.

These last two signed the petition upon the understanding that a portion of their assessments for the work should be paid by one of the aldermen, and a portion by the party who subsequently became the contractor.

I find nothing in the record tending to show any wrong intended by the men who agreed to assist in paying the assessments of the two persons who did not want to sign on account of their inability to pay their *pro rata* assessments, or that the latter two understood they were doing anything improper in giving their signatures to the petition on those considerations.

The other two property owners whose names were signed to the petition by others acting for them have never repudi-

ated their authority so to do, but both have ratified the acts of the persons making their signatures, by paying the assessments against their property when made.

There is no question but that the petition contains the genuine names of the owners of the majority of the frontage on the line of the street to be paved, and that the majority of the common council, indeed all but one, were entirely ignorant of the existence of the facts charged by complainant to be within their knowledge, and which he claims constitutes the fraud relied on to vitiate the assessments against complainant's property. If the evidence showed the common council participated in the acts complained of, or that they had knowledge of such action, when they took proceedings to authorize the pavement, a different case would be presented from the one we are called upon to consider; but, as the record now stands, I fail to discover anything in the circumstances detailed in the record preventing the council from taking action upon the petition. *Townsend v. Hoyle,* 20 Conn. 1; *City of Springfield v. Harris,* 107 Mass. 532.

The second objection is that the council had no power to make two assessment districts of the improvement.

But one petition is necessary to authorize the common council to take the necessary action to secure the pavement of a street, or any part thereof. Whether or not there shall be more than one assessment district established is entirely discretionary with the council. Local Acts 1877, p. 254, § 17; Local Acts 1879, p. 298, § 2.

In the present case two such districts were formed, called the "upper" and "lower," also, in the assessment, called Nos. 1 and 2. In the upper the pavement was to be but 24 feet wide, while in the lower it was 35 feet in width. Many reasons might be given why the power to create more than one district in a line of pavement should be vested in the common council. *Butler v. Detroit,* 43 Mich. 552; *Wilkins v. Detroit,* 46 Id. 123; *Taylor v. Palmer,* 31 Cal. 240.

The third objection of complainant's counsel has been disposed of in what has already been said.

His fourth objection is that the mayor, after the adoption of the resolutions to pave the street, had no opportunity to veto the same, as was his right, granted by the statute.

I see nothing in this objection needing consideration. He was present when they were adopted, and approved of the same upon the record. So far as the record discloses, he had all the opportunity he desired for such purpose. The provisions of the statute relating to this subject will be found in Local Acts 1879, p. 278, §§ 11, 12. It does not appear that he had any desire to interpose his veto. He was undoubtedly in favor of the improvement. I think that is clearly the presumption from what does appear.

The fifth and last objection of complainant's counsel is that "the contract was not let to the lowest responsible bidder."

The evidence shows that the work was advertised, and bids received by the council for the same, and that Charles Grieb's and John Hoffman's bids were the lowest. Grieb's was the lowest, but, before the contract was made, he informed the council that a mistake had been made in fixing the terms of his bid, and he wished to withdraw it, and he was allowed to do so; and the contract was made, and the work let, to Mr. Hoffman, who was the next lowest bidder. This the council had a right to do. But the complainant alleges there was collusion between Grieb and Hoffman, which was the occasion of Grieb's withdrawal of the bid, and that the council knew it. The evidence, however, fails to convince us that such was the fact; and there are some considerations of an equitable character why Hoffman should have received the contract which he did. *Albany & Boston Min. Co. v. Auditor General*, 37 Mich. 391.

Unless the collusion and fraud charged in such cases as this is participated in by the common council, or it has knowledge thereof as an official body, it will not invalidate

the assessment. *State v. Jersey City*, 29 N. J. Law, 449; *Dusenbury v. Newark*, 25 N. J. Eq. 297; *Liebstein v. Newark*, 24 Id. 204; *Nolan v. Reese*, 32 Cal. 484; Cooley, Taxation (2d ed.), 671.

Much is said of the faulty and bad construction of the work done under the contract, and other matters of a kindred nature in the record; but the parties assessed for municipal improvements of this kind must take the hazard incident to all public improvements, of their being faulty, or even useless, occasioned through the neglect, incapacity, or fraud of public servants. See authorities above cited, and others therein referred to. See, also, *Motz v. Detroit*, 18 Mich. 515; *Byram v. Detroit*, 50 Id. 58.

It is entirely unimportant to show in this case whether the improvement benefited the property or not. *Com. v. Woods*, 44 Penn. St. 113; *Wray v. Pittsburgh*, 46 Id. 369.

Whether the assessment by the per foot frontage was the best or most equitable way of distributing the burden, under the circumstances of this case, cannot affect the assessment. *Williams v. Detroit*, 2 Mich. 560; *Motz v. Detroit*, 18 Id. 495; *Sheley v. Detroit*, 45 Id. 431.

The charter of the city of Port Huron expressly authorizes this mode of assessment, and the hardship of it, if constitutional, will not invalidate the assessment, when resorted to. It is well said by Judge COOLEY, many wrongs and hardships occur in taxation which cannot be remedied. The judiciary is confined to the question of jurisdiction to levy the tax, and, if that is found, the judiciary must pause, and acknowledge its incompetency to inquire into the wrong, or redress it. Cooley, Taxation (2d ed.), 823; Charter Port Huron, *c.* 16, § 2 (Local Acts 1879, p. 298); *Morrison v. Hershire*, 32 Iowa, 271; *City of Des Moines v. Dorr*, 31 Id. 93.

There are some reasons in this case, I think, why this party should not, in justice, be heard to make the complaint he now does. He stood by, and saw the money expended,

or liability incurred, on the improvement while it was being authorized and being constructed; and when warned, and requested to appear before the proper authorities, and make his objections thereto, if he had any, he neither came near, nor made anything of the kind. This proceeding afterwards ought not to be looked upon with any great degree of favor. 2 Desty, Taxation, 660; *State v. Trenton*, 36 N. J. Law, 499, 506; *Weber v. San Francisco*, 1 Cal. 455; *City of Lafayette v. Fowler*, 34 Ind. 140; *Palmer v. Stumph*, 29 Id. 329; *City of Evansville v. Pfisterer*, 34 Id. 36–45; *Traphagen v. Jersey City*, 29 N. J. Eq. 206; *Kellogg v. Ely*, 15 Ohio St. 64; *State v. Paterson*, 36 N. J. Law, 159; *Barker v. Omaha*, 16 Neb. 269; *Sleeper v. Bullen*, 6 Kan. 300; *Tash v. Adams*, 10 Cush. 252; *City of Peoria v. Kidder*, 26 Ill. 351; *Motz v. Detroit*, 18 Mich. 495; *Warren v. Grand Haven*, 30 Id. 24; *Whiting v. Mayor of Boston*, 106 Mass. 94; 2 Herman, Estop. §§ 1220, 1221.

It nowhere appears, that I have been able to discover, from this record, that the complainant has been assessed for anything more than his proper ratable proportion of the assessment of which he complains; neither does he express any willingness to pay any such proportion, but relies upon the alleged invalidity of the proceedings to defeat the improvement altogether.

So long as the common council of the city keeps within the limits of its jurisdiction, as defined by the Constitution and statute, and the members are guilty of no fraud or intentional wrong or corrupt conduct in the discharge of their official duty, the court has no power to control the exercise of their legal discretion, or to overrule or set aside their judgment, but their action must be held alike binding upon the city and all its inhabitants. *Williams v. Detroit*, 2 Mich. 575; *Hoyt v. East Saginaw*, 19 Id. 39; *Motz v. Detroit*, 18 Id. 495; *Brevoort v. Detroit*, 24 Id. 322; *Jackson v. Detroit*, 10 Id. 248; *City of Lansing v. Van Gorder*, 24 Id. 456; *City of Detroit v. Beckman*, 34 Id. 125.

On a full review of this case, and a careful examination of the briefs of the learned counsel for the respective parties, I can come to no other conclusion than that arrived at by the circuit judge, and I think the decree should be affirmed, with costs.