## ZORN *v.* WARREN-SCHARF ASPHALT PAVING COMPANY.

[No. 5,827. Filed June 21, 1907. Rehearing denied April 23, 1908. Transfer denied June 30, 1908.]

1. MUNICIPAL CORPORATIONS.—*Street Assessments.—Liens.—Basis of Suit to Foreclose.*—The basis of a suit to foreclose a lien for the construction of street improvements is the assessment made for such improvements. p. 220.

2. SAME.—*Street Assessments.—Collateral Attack.*—A collateral attack upon a street assessment must fail, unless the council has failed to comply with some statutory provision which constitutes a condition precedent to its right to make such assessment. p. 220.

3. SAME.—*Street Assessments.—Foreclosure.—Collateral Attack.*—In a suit to foreclose the lien of a street assessment, a defense that the assessment is invalid for want of power to make it constitutes a collateral attack upon such assessment. p. 220.

4. STATUTES.—*Construction*—*Street Assessments.*—Statutes grant-ing city councils the power to impose the cost of making street improvements upon the property benefited, should be strictly con-strued.    p. 221.

5. MUNICIPAL CORPORATIONS.—*Street Improvements.—Bids.—Notice.*—The acceptance or rejection of bids for the construction of street improvements is administrative, but the giving of notice for bids is jurisdictional.    p. 221.

6. SAME. — *Street Improvements.—Bids.—Rejection.—Reletting.—Statutes.*—Under §4291 Burns 1901, Acts 1891, p. 323, §1, provid-ing that in case a successful bidder for the construction of street improvements fails to perfect his bid the council "may" order the work done by the street commissioner or marshal, the cost not to exceed such bid, or "may" readvertise for bids, a council may not, upon a successful bidder's failure to perfect his bid by entering into the required contract, contract with the next lowest bidder without readvertising for bids.    pp. 221, 224, 228.

7. STATUTES.—*Violation.—Purpose Accomplished.*—Where a statute prescribes the manner of doing an act, the fact that the desired end was attained, though the statute was violated, is no defense.    p. 222.

8. MUNICIPAL CORPORATIONS.—*Street Assessments.—Basis of Right.*—The right to assess property for the payment of the cost of street improvements is purely statutory.    p. 223.

9. STATUTES.—*Competitive Bidding.—For Whose Benefit.—Manda-tory.*—Statutes providing for competitive bidding for the con-struction of street improvements, the cost to be borne by property owners, are primarily for the benefit of such property owners, and the performance of the provisions beneficial to such owners must be regarded as mandatory.    p. 223.

10. SAME —*Permissive.—Private Rights.*—A statute in permissive language empowering officers to do certain acts beneficial to in-dividuals must be regarded as peremptory, and as establishing a positive duty.    p. 223.

11. MUNICIPAL CORPORATIONS.—*Street Improvements.—Bids.—Stat-utes.*—The letting of a contract for street improvements at public bid is a substantial part of the statute which city councils cannot disregard.    p. 224.

12. NOTICE.—*Letting of Street Improvement Contracts.—Lienors.*—A contractor for street improvements must take notice of the failure of a city council to readvertise for bids upon the failure of a former bidder to enter into the contract awarded to him.    p. 228.

13. MUNICIPAL CORPORATIONS.—*Street Improvements.—Report of Engineer.—Hearing upon.—Collateral Attack.*—Although §4294 Burns 1901, Acts 1899, p. 63, provides that the city council shall

give a public hearing upon the city engineer's report of the cost of street improvements, still, if the council, in the absence thereof, accepted a completion of the contract therefor, its action therein cannot be collaterally attacked.   p. 229.

14.   JURISDICTION.—*Street Improvements.—Bids.—Notice.*—The re-letting of a contract for street improvements without readvertising for bids, after the former successful bidder failed to enter into his contract, is void for want of jurisdiction over·the subject-matter.   p. 229.

15.   NOTICE.—*Street Improvement Contracts.—Reletting.—Infer-ences.*—Where a bidder for the construction of a street improve-ment fails to enter into the contract therefor, and the council relets the contract without readvertising, there can be no infer-ence that the council considered the one notice as sufficient for the reletting.   p. 229.

16.   MUNICIPAL CORPORATIONS.—*Street Improvements.—Time of Making Contracts for.*—The object of the statute requiring competi-tive bidding for the construction of street improvements is to have such contracts made near the time when the improvements are to be constructed.   p. 230.

17.   ESTOPPEL. — *Street Assessments. — Objections. — Injunction.* — Where a property owner objects to the making of street improve-ments, giving proper notice thereof, he can successfully defend against the enforcement of a lien for the cost thereof, it being unnecessary to bring an injunction suit to restrain the making of such improvements.   p. 230.

From Laporte Superior Court; *Charles H. Truesdell,* Special Judge.

Suit by the Warren-Scharf Asphalt Paving Company against Philip Zorn.   From a decree for plaintiff,·defendant appeals.   *Reversed.*

*James F. Gallaher,* for appellant.

*C. R. Collins, J. B. Collins* and *M. M. Townley,* for appel-lee.

MYERS, J.—On April 11, 1902, appellee brought this suit to foreclose an alleged street paving assessment lien against appellant's property.   The assessment was made under the act of March 8, 1889 (Acts 1889, p. 237, known as the Barrett law), and amendments thereto.

The complaint is in six paragraphs, which relate to as many separate pieces of property.   Nine paragraphs of an-

swer and two paragraphs of reply were filed. The first paragraph of answer and the first paragraph of reply were general denials. A demurrer was sustained to all the affirmative paragraphs of answer except the seventh. A demurrer to the second paragraph of reply was overruled. Upon the issues thus formed the cause was tried by the court, and a finding made in appellee's favor for $2,027.43, and a decree entered accordingly.

Separate errors are assigned on the action of the court in sustaining appellee's demurrer to the several paragraphs of answer and in overruling appellant's demurrer to the second paragraph of reply, and in overruling his motion for a new trial.

We will not take the space to discuss separately these various assignments of error, as the controlling question is one of power in the council to make the assessment, and is presented by uncontroverted facts, which, for the purpose of a decision of this cause, may be stated as follows: On January 23, 1899, the common council of the city of Michigan City, by a two-thirds vote of all the members thereof, passed a resolution declaring a necessity to exist for the improvement of certain streets in said city "by paving and curbing the same with good, hard-burned paving brick, laid on a base of crushed stone, and stone curbing." It was at the same time "further resolved" to improve these streets "by paving with sheet asphalt on a base of concrete, and stone curbing." At the same time it was "further resolved" to improve the same streets "by paving with asphalt block on a base of crushed stone, and stone curbing." The clerk, as directed by said council, gave notice of the proposed kinds of improvement, as set out in the resolution, and a hearing was had. Afterwards, on March 18, 1889, by a two-thirds vote of all the members of said council, two ordinances were passed, one that the streets be improved by paving with sheet asphalt on a base of concrete, the other providing for the improvement of the same streets by paving

with hard-burned paving brick on a base of concrete. Each ordinance ordered that the clerk advertise for bids. As directed, the clerk advertised for bids for the improvement of said streets by paving the same with sheet asphalt, and also by improving the same with good, hard-burned paving brick. In response to the advertisement, on April 24, 1899, a number of bids were received, two of which were introduced in evidence. The bid of R. F. Conway & Company proposed to construct a combined curb and gutter at forty-five cents per lineal foot, to pave with asphalt, as per specifications, at $1.45 per square yard, and to do the grading at twenty cents per cubic yard. The bid of the Warren-Scharf Asphalt Paving Company was to make a combined curb and gutter at sixty cents per lineal foot, to pave with asphalt, as per specifications, at $1.75 ·per square yard, and to do the grading at thirty cents per cubic yard. The proposals were submitted to a committee of the council, who on May 3, 1899, reported, recommending the acceptance of the bid of R. F. Conway & Company, and on the same date the council, by resolution, accepted. this bid, and instructed the mayor to enter into a contract with that company for said improvements. R. F. Conway & Company did not enter into a contract, did not file any bond, and did no work on the streets. On November 27, 1899, the council adopted a resolution reciting that whereas the firm of R. F. Conway & Company had failed and refused to proceed with the improvement under the contract awarded to that company on May 3, 1899, and "whereas there prevails among the owners of the real estate fronting on the several lines of said improvements a general opinion that the material proposed to be used by said R. F. Conway & Company is of inferior or at least doubtful quality, and a large number of said owners have requested that in the improvement of said streets as contemplated in the specifications adopted therefor only the best Trinidad lake asphalt be used, even though the cost thereof be slightly greater than that of an inferior or doubtful

quality, and whereas the only proposals submitted to this council for said improvement with Trinidad lake asphalt was submitted by the Warren-Scharf Asphalt Paving Company, now, therefore, be it resolved by the common council of the city of Michigan City: (1) That the vote and action of this common council awarding the contract to improve and pave Spring, Pine and Wabash streets in said city to R. F. Conway & Company, of Chicago, Illinois, be and the same are hereby reconsidered; (2) that the several propositions of the Warren-Scharf Asphalt Paving Company for improving said Spring, Pine and Wabash streets by grading curbing and paving the same with stone and cement concrete, and combined curb and gutter, and genuine Trinidad lake asphalt according to the plans, specifications and profiles prepared by the city civil engineer and adopted by this common council, and now on file in the city clerk's office, which propositions were submitted to this council at the same time as those of R. F. Conway & Company aforesaid, be and the same are hereby severally accepted and the contracts for making said improvements are hereby severally awarded to said Warren-Scharf Asphalt Paving Company.'' Provided said company shall within ten days enter into a contract to do such work ''as provided in said specifications, and with Trinidad lake asphalt,'' and complete the same by a day named, and file a specified bond. The mayor was also directed to enter into a contract on behalf of the city with said paving company. In accordance with this resolution, on November 28, 1899, the mayor entered into a contract with appellee. On September 24, 1900, the final estimate on Spring street, and on October 8, 1900, the final estimate on Pine street, were reported by the city engineer of said city, and the same were referred to the committee on streets and alleys, and notice ordered and given to the property owners whose property abutted on said improvement, and a hearing had on November 26, 1900. On this last date said committee reported to the council that said contractor had complied

with and completed said improvement in accordance with the contracts, that the property described had been benefited, and recommended that the improvement be accepted and that the estimate of the engineer be adopted and confirmed. On November 26, 1900, the report of the committee, the final estimate, and the assessments against the property on Pine street were by resolution approved and confirmed, and, upon the filing of waivers by property owners, the same were to be placed upon the tax duplicate, etc. On January 17, 1901, said council by resolution adopted and approved the final estimate and the assessments as reported by the committee, and assessed the several amounts against the abutting property. On January 13, 1902, said council by resolution reconsidered its vote of January 17, 1901, and the assessments then levied, referred the matter back to the committee, and ordered that the committee meet on January 31, 1902, to hear objections to reassessments. On this last date the committee reported to the council corrected assessments against the property of appellant, and on February 10, 1902, the amended assessments so reported were adopted and approved by said council, and are the assessments sued on. Appellee, in the performance of its contracts, began work on Spring street the latter part of June, and on Pine street in July, 1900, and completed the work on Spring street September 20, and Pine street October 4, 1900. On July 11, 1900, and before work had actually begun on Pine street, appellant caused notice to be served on appellee and said city, that he was the owner of the real estate described in the complaint herein; that it abutted on that portion of Spring and Pine streets proposed to be improved; that he was not acquiescing in said improvement; that he would not pay any amount assessed against said real estate on account of said improvements, and denied any authority to create a lien thereon for the cost thereof, because the contract between appellee and said city was void, for the reason that on May 3, 1899, after advertising for

bids for the work of improving said streets, the common council of said city accepted a bid other than that of appellee to make said improvements, and that the contract with appellee was entered into thereafter without advertising and submitting the proposed improvement for bids, as by the statutes of Indiana required; that the contract provides for the keeping of the improvement in repair for a certain number of years, and because the cost of the proposed improvement was to be assessed against the abutting property per front foot, regardless of benefits.

The foundation of this suit is the assessment (*Lewis* v. *Albertson* [1899], 23 Ind. App. 147), which is conclusive against a collateral attack (*Hibben* v. *Smith* [1902], 158 Ind. 206) unless the common council has neglected to comply with some statutory provision amounting to a condition precedent to the right to exercise its authority to make the improvement and assess the costs thereof against the abutting property. Such a condition is a check upon the power of the tribunal and is jurisdictional (*Edwards* v. *Cooper* [1907], 168 Ind. 54), and a failure of the municipality to do that which the legislature says it must do, to acquire jurisdiction, renders the proceeding void. *Cleveland, etc., R. Co.* v. *Edward C. Jones Co.* (1898), 20 Ind. App. 87, 92; *Barber Asphalt Pav. Co.* v. *Edgerton* (1890), 125 Ind. 455; *Niklaus* v. *Conkling* (1889), 118 Ind. 289. The defense interposed to this suit constitutes a collateral attack on the judgment of the council, and cannot prevail unless upon the face of the proceedings some mandatory step essentially jurisdictional has been omitted. *Brown* v. *Central Bermudez Co.* (1904), 162 Ind. 452; *Edwards* v. *Cooper, supra; City of Indianapolis* v. *Consumers Gas Trust Co.* (1895), 140 Ind. 246, 253, *Ross* v. *Stackhouse* (1888), 114 Ind. 200, 202; *Weir* v. *State, ex rel.* (1884), 96 Ind. 311; *Evansville, etc., R. Co.* v. *City of Evansville* (1860), 15 Ind. 395, 421; *Eddy* v. *Wilson* (1871), 43 Vt. 362. The power of municipalities

to impose burdens upon private property is purely
4. statutory, and such statutes are to be strictly con-
strued. *Wickwire* v. *City of Elkhart* (1896), 144
Ind. 305, 307; *Niklaus* v. *Conkling, supra; Cleveland, etc.,
R. Co.* v. *Edward C. Jones Co., supra; Mason* v. *Fearson*
(1850), 9 How. *248, 13 L. Ed. 125; *Barber Asphalt Pav.
Co.* v. *Edgerton, supra,* at page 461. In *Case* v. *Johnson*
(1883), 91 Ind. 477, 492, it is said: "In all such [street
improvement] cases as the one at bar, the rule has been re-
peatedly declared by this court, that there must be a strict
compliance with the provisions of the statute; or, otherwise,
it must be held that the proceedings are invalid, illegal and
void," citing cases.

Appellant insists that the council had no authority under
the statute to relet the contract to appellee without re-
advertising for bids. It is settled that "the matter
5. of accepting or rejecting bids, and of letting the con-
tract, is purely administrative in character, depend-
ing entirely upon the discretion of the common council.
*Platter* v. *Board, etc.* [1885], 103 Ind. 360." *Ross* v. *Stack-
house, supra.* But the question of notice inviting proposals
for the work is jurisdictional. *Ross* v. *Stackhouse supra,*
and cases there cited.

Looking to the statute as the basis of appellant's in-
sistence, the proviso in §4291 Burns 1901, added to section
four of the original act (Acts 1889, p. 237) by
6. amendment (Acts 1891, p. 323, §1), provides: "That
after receiving bids for the improvement of any
street or alley, or the construction of any sewer, as afore-
said, and in case all such bids are rejected as unsatisfactory
by reason of the bids being for too great a price, or the
bidder failing to give a satisfactory bond, or for any other
cause deemed sufficient by such common council or board of
trustees, then, and in such case, the common council of any
city, or the board of trustees of any incorporated town, may
order the work to be done by the street commissioner of

such city or the marshal of such town; but in such case the total cost of the work to be assessed against the property owners, shall not be in excess of the lowest responsible bid for said work, which cost shall be assessed and collected, and bonds may be issued therefor, as provided in case of the letting of the work by contract, or the council or board of trustees may in such case readvertise for bids for said work."

In the case at bar the bid of R. F. Conway & Company was accepted, and it failed to comply with the provisions of the statute after such acceptance. For reasons deemed by the council sufficient, it refused to contract with said company to do the work. No question is made that the council had sufficient reason for failing to contract with this company. In such case the statute then provides that the council "may order the work to be done by the street commissioner," but the total cost "shall not be in excess of the lowest responsible bid for said work," or "the council or board of trustees may in such case readvertise for bids for said work."

When the legislature said that the council "may" have the work done by the street commissioner, or "may" readvertise for bids, did it mean that the council should do one or the other, or that it might do neither, but adopt some other plan not mentioned in the statute? The question raised by the reletting of the contract is jurisdictional. It is simply a question of power vested in the council by the statute. Whether the course pursued by the council 7. in such a case produced results equal to or better than could have been produced by following the prescribed statutory method is wholly immaterial. It must be conceded in any such case, that if the council may ignore one provision of the statute it may ignore any other or all.

In this case, if the council had the power to relet the con-

tract as it did, and thus in the end place a lien upon appellant's property, it must derive the power from the statute. If the statute does not authorize the exercise of such power, it does not exist, and the action of the council is a nullity. What then is the meaning of the statute? Applying the rule of strict construction, when the council determined not to enter into the contract with R. F. Conway & Company, it was required to do one of two things; either have the work done by the city street commissioner, or readvertise for bids. If the work was ordered done by the street commissioner, the cost must not be in excess of the lowest responsible bid for the work. It is true, the statute says the council may order the work done by the street commissioner or it may readvertise for bids.

The fact must be kept in view that the council was exercising a power affecting strictly individual rights, and that statutes of this kind for competitive bidding are for the benefit of the property owner who must bear the expense of the improvement. In such cases, when a statute directs the performance of an act, which is for the benefit of the citizens or the public, it is to be construed as mandatory and not directory. *City of Madison* v. *Smith* (1882), 83 Ind. 502, 513. It has also been held that where power is given to public officers, and the public interest or individual rights call for its exercise, the language used, though permissive in form, is in fact peremptory, and that the intent of the legislature in all such cases was not to declare a mere direction, but to impose a positive and absolute duty. *Board, etc.,* v. *United States* (1866), 4 Wall. 435, 16 L. Ed. 419. It is also held that whenever it is provided that a corporation or officers "may" act in a cartain way, it may be insisted on as a duty that they act in that way. *Mason* v. *Fearson, supra.*

We fail to see how it can be said that a reletting of the contract in this case was no more than a mere irregularity.

It must be conceded that if the council had any authority at all to let a contract for such work, it derived the power from some statute. Whatever discretion the council was authorized to exercise must be exercised within the statute. *Board, etc.,* v. *Templeton* (1875), 51 Ind. 266. The statute authorized the council to do one of two things only. It had no discretion to do anything else. Had it attempted to do one or the other, it might have committed some irregularity that would not go to the validity of the proceeding (*McEneney* v. *Town of Sullivan* [1890], 125 Ind. 407, 411) ; but in this case the action taken by the council is not only not in compliance with any statutory provision, but is in disregard of the statutory provision for just such a case. If these two provisions had been omitted from the statute, and the council had taken the course it did take, there would be some reason to support an argument that the action of the council was no more than an irregularity, but the statutory check was disregarded, and the effect of the action of the council was to eliminate these provisions from the statute. Had the legislature intended that when a condition like that in question presented itself to the council, the council might exercise an arbitrary discretion and proceed with the work, as it thought best, it certainly would not, in the same section, have limited the exercise of that discretion to the choice of one of two methods to be pursued.

In *Dickinson* v. *City of Poughkeepsie* (1878), 75 N. Y. 65, the city water commissioners had power to let a contract "to the lowest bidder who shall give due security" upon public notice of proposals. A bidder was permitted by the engineer, to whom the proposals were referred for calculation and comparison, to alter his bid so as to make it appear lower than the others, and then, after acceptance of this bid, a contract was made at higher prices, with prices stipulated for not in the competition at all, and a clause inserted for the benefit of the contractor in no manner contemplated by or

offered to the other bidders; held, that the contract was unauthorized and void, and, being void when executed, did not confer upon the contractors any right of action thereunder.

In *Mitchell* v. *City of Milwaukee* (1864), 18 Wis. *92, the city charter required that all work " 'shall be let by contract to the lowest bidder, and due notice shall be given of the time and place of letting such contract.' " Another provision, that if the work was "not done within the time limited in the contract, * * * the commissioner might 're-let such work without further notice,' " did not dispense with the requirements that the commissioner should give notice of a reletting of the contract; and, where the contract was relet without notice, it was held that the contract itself, and the assessment upon a lot for work done under it, were void.

In *Twiss* v. *City of Port Huron* (1886), 63 Mich. 528, 30 N. W. 177, the city charter required that contracts for street improvements should be let to the lowest bidder, and one of four bidders, whose bid was the lowest, was allowed to withdraw his bid on the ground of an alleged mistake in the amount, and the contract was awarded to the next lowest bidder, without readvertisement; held, that such action was illegal, and that such readvertisement should have been ordered; that the council had no power to deprive the parties who would be assured of the benefit of the letting to the lowest bidder.

In *Board, etc.,* v. *Templeton* (1875), 51 Ind. 266, it is held that where, at the time fixed in the advertisement for letting the contract to build a court-house, the commissioners were prevented from receiving bids and letting the work, by an injunction which was afterwards dissolved, the letting of the work at a subsequent time, without another advertisement, was beyond the power of the board.

In *Bass Foundry, etc., Works* v. *Board, etc.* (1888), 115

Ind. 234, a contract had been regularly entered into, and the contractor had partially completed the buildings, and had then abandoned the work and declared his inability to complete it; held, that the commissioners might complete the work without reletting the contract, but in the opinion it is said: "In the event that a contractor should abandon his contract when the work is at such an incipient stage as that to complete it would amount practically to the construction of a court-house by county commissioners, without regard to the contract previously let, it might be a question whether contracts made by them for labor and material would be binding as such upon the county."

Counsel for appellee argue, that the power to let the contract was not exhausted by the first letting, and that it was within the council's discretion to make the second letting, and cite the case of *Gibson* v. *Owens* (1893), 115 Mo. 258, 21 S. W. 1107. In that case a general ordinance providing for street improvements required all contracts to be awarded by the city engineer "to the lowest reliable and responsible bidder or bidders, * * * who will sufficiently guarantee to the satisfaction of the comptroller the performance of said work under the superintendence, and to the satisfaction of said city engineer. * * * In case the mayor and common council should, for any reason, reject all the bids offered, the city engineer shall proceed to advertise such work again, *at the option of the common council.*" (Our italics.) The lowest bidder refused to enter into a contract and make the required guaranty, and the engineer gave the contract to the next lowest bidder, which was confirmed by the council.

Appellee also relies upon the cases of *Ross* v. *Stackhouse* (1888), 114 Ind. 200, and *Boyd* v. *Murphy* (1891), 127 Ind. 174. Both of these cases were decided prior to the amendment of the statute before referred to. And but for that amendment, amounting to a direction to the council, their action in this particular might be regarded as an irregularity, a question we do not decide. The appeal in each case

was from a precept issued by the council, and the court held that under the statute no question of fact could be tried which arose prior to the execution of the contract. In the first of the two cases last referred to the court said: ''While it is true that the statute prohibits the trial of any question of fact which arose prior to the making of the contract for a street improvement, it is nevertheless essential that the transcript should show the taking of such jurisdictional steps as legally authorized the common council to contract for the improvement. It must appear that the letting of the contract was advertised. In the absence of notice inviting proposals for the work, the contract will be invalid.'' In the last case the contract had been let to a bidder whose bid was not the lowest, but was the highest bid, and was let on the condition that the contractor do some extra work not specified in the improvement ordinance and advertisement for bids. It was held that the council had the power to choose between bidders, and, when it had done so, that its decision was final; that it must be presumed that the council acted in good faith and for the best interests of both the city and property holders, and exercised its discretionary power wisely.

We are referred to the case of *Lux, etc., Stone Co.* v. *Donaldson* (1904), 162 Ind. 481. The question there and the one before us are not the same. In that case the answer admitted that an advertisement for bids to make the improvement had been given, bids received, and the contract let to do the work and make the improvement according to the plans and specifications on file with the city clerk, the work reported and approved as having been completed according to contract, assessments reported, approved and ordered paid. But, by way of defense to the collection of a final estimate, it was alleged that the work was not done according to contract, by reason of the use of faulty material, material not specified in the specifications, and alleging various other defects in the work, and that such material was used

and the work done by and with the consent of the council and civil engineer without advertising for bids, and that no bids were received for the kind of material so used and for the kind of work done. This answer was held bad upon the ground that such matters so set up were not available as a defense in a collateral attack upon the proceedings of the council.

As we have said, there is no pretense that the municipality attempted to comply with the statute by readvertising for bids before letting the contract to appellee. Appellee was bound to take notice of this omission. *City of Indi-*
12. *anapolis* v. *Wann* (1896), 144 Ind. 175, 188, 31 L. R. A. 743; *Smith* v. *Board, etc.* (1893), 6 Ind. App. 153; *Hamilton* v. *City of Shelbyville* (1893), 6 Ind. App. 538.

In *Van Sickle* v. *Belknap* (1891), 129 Ind. 558, it is said: "The ordinance, the advertisement, and the award are as essential as the contract, but no one of them in itself
6. can be said to be the foundation of the lien. The truth is that these things constitute steps in the procedure, but no one of them constitutes the foundation of the lien, for all must exist to create a perfect lien, and where there is no element of waiver or estoppel, all must be shown in order to establish an enforceable right."

The question of foreclosing a street assessment lien was before the court in *Pittsburgh, etc., R. Co.* v. *Fish* (1902), 158 Ind. 525, and in that case the court said: "In an action for the enforcement of a right granted by a special statute, not only the complaint, but the proof, must show that all the conditions upon which the right depends have been complied with. * * * The statute plainly provides the steps that shall be taken in a street improvement to create an enforceable lien, and it can be created in no other way." See, also, *Brown* v. *Central Bermudez Co., supra,* at page 456.

The question in this case is one based upon a statutory provision intended for the protection of the property owner,

and he is entitled to have this provision substantially complied with before having his property subjected to an assessment growing out of a purely statutory proceeding.

13. True, §4294 Burns 1901, Acts 1899, p. 63, provides a hearing upon the report of the engineer as to the final estimate of the cost of such improvement. But in case the improvement has been completed according to contract, a fact when settled by the council is impervious to a collateral attack because of mere irregularities. The same section provides that "the common council * * * shall assess against the several lots or parcels of ground the several amounts which shall be assessed for and on account of such improvements." Granting that the final notice provided for by statute gives the council jurisdiction over the persons of the abutting property owners (*Pittsburgh,*

14. *etc., R. Co.* v. *Taber* [1907], 168 Ind. 419, 426), and that the law invests that body with jurisdiction over the subject-matter (*Brown* v. *Central Bermudez Co., supra*), yet it must be remembered that jurisdiction over the subject-matter depends upon the taking of certain jurisdictional steps, and when all have been taken the law acts to give the council such jurisdiction. One of these steps in this case is the giving of a prescribed notice of an intention to relet the contract. This is not a case of an attempt to comply with the statute by giving a notice which proved to be defective, but a case of no notice at all. It is argued that the notice of the time for the original letting was some notice of the reletting, and as the council acted upon that notice and adjudged it sufficient no advantage of such

15. action can be taken upon collateral attack. The record does not disclose any action on the part of the common council showing such an adjudication, but we are left to infer that it did take such action, because of its affirmative action in awarding the contract to appellee. No such inference follows. The proceedings which resulted in giving the contract to appellee took place nearly seven months after the accept-

ance of the bid of R. F. Conway & Company. The original notice to bidders had served its purpose. In response thereto bids were received. One of these bids was accepted, and thereby all others, including the bid of appellee, were impliedly rejected. The successful bidder failed to contract, failed to give a satisfactory bond, and the council by resolution rescinded its original action awarding the contract, and at the same time awarded it to appellee, when from the very nature of things the work could not be done for a year after the time contemplated by the first letting. It is well known that conditions controlling the price of materials and labor for such improvements do not always remain the same, and that bids are often influenced by the length of time the contract is entered into in advance of the time the work is to be performed. Such facts would imply a legislative intention in the enactment of the amendment to keep in the open such improvements for competitive bidding impressed with the conditions existing at the time of such reletting, and thereby securing to the property owners the open market for the contemplated improvement.

Appellee insists that the notice of July 11 given by appellant to appellee and said city was ineffectual; that he should have made an effort by injunction to stop the improvement, and failing to do so until after the improvement was made he is estopped to refuse to pay for it. Citing *City of LaFayette* v. *Fowler* (1870), 34 Ind. 140. This particular question has been decided contrary to appellee's contention. *Edwards* v. *Cooper, supra.*

For the reasons stated in our opinion the record does not disclose an enforceable lien. Judgment reversed, with instructions to the trial court to sustain appellant's motion for a new trial.

Roby, C. J., absent.