# BOARD OF COMMISSIONERS OF THE COUNTY OF HUNTINGTON *v.* PASHONG.

[No. 6,760. Filed January 16, 1908.]

1. COUNTIES.—*Boards of Commissioners.—Furnishings for Offices.* —The boards of commissioners have the statutory authority (§§5989, 5990 Burns 1908, §5748 R. S. 1881, and Acts 1899, p. 467) to provide furnishings for the county offices. p. 75.

2. SAME.—*Furnishings for Offices.—Contracts.*—Under §§5589-5592, 5594q1 Burns 1901, Acts 1899, p. 170, §§1-4, Acts 1901, p. 48, §§1-3 and Acts 1899, p. 343, §37, boards of commissioners must let, at public bid, the contract for providing furnishings for the county offices, and the procedure therein specified must be followed. p. 75.

3. SAME.—*Furnishings for Offices.—Statutes.*—A contract for the furnishing of the offices in a new court-house is governed by §5989 Burns 1908, §5748 R. S. 1881, providing for the construction of a court-house, and not by §5953 Burns 1908, Acts 1903, p. 318, providing for the letting of contracts for office supplies. p. 75.

4. SAME.—*Furnishings for Offices.—Contracts.*—Contracts for the furnishings of the county offices can be made only upon competitive public bids, the award being made to the "lowest and best responsible bidder." p. 75.

5. SAME.—*Furnishings for Offices.—Plans and Specifications.—Contracts.*—Where the plans and specifications for the furnishings of the county offices in a new court-house are not specific, but leave a great part of the details to be included in plans to be furnished by the bidders themselves, no contract can be let thereon. p. 76.

6. INJUNCTION.—*Contracts.—Counties.—Furnishings for Offices.*— Injunction lies to restrain the board of commissioners from letting a contract for the furnishing of the county offices in a new court-house, where the plans and specifications are not specific. p. 77.

From Huntington Circuit Court; *Samuel E. Cook*, Judge.

Suit by Frank J. Pashong against the Board of Commissioners of the County of Huntington. From a decree for plaintiff, defendant appeals. *Affirmed.*

*Lesh & Lesh* and *C. S. Denny*, for appellant.
*C. W. Watkins* and *Charles A. Butler*, for appellee.

MYERS, J.—In the court below appellant, at the suit of appellee, a taxpayer of Huntington county, Indiana, was enjoined from entering into a contract with the Art Metal Construction Company for furnishing the wood and steel furniture for the new court-house being erected in Huntington county.

For a reversal of that judgment, appellant has presented and argued two propositions:   (1) That the evidence is insufficient to support the decision of the trial court;  (2) that such decision is contrary to law.

On May 3, 1907, pursuant to published notices authorized by appellant, inviting bids for furnishing steel and wooden furniture for the court-house then in process of construction. and for placing such furniture in said court-house according to plans and specifications on file in the office of the county auditor, the Art Metal Construction Company bid $19,360—$16,500 for the steel, and $2,860 for the wooden furniture.   The General Fire Proofing Company bid $16,370 and $15,814, embracing two propositions, based upon different specifications, each covering the steel and wooden furniture called for by the plans and specifications on file with said auditor.   The Ohnstrand Metal Furniture Company furnished specifications for said furniture, etc., as called for in said notices and drawings filed in said auditor's office, and bid $15,088.   The evidence in the record shows that the plans and specifications referred to in each of the bids as being on file in the auditor's office consisted of twenty-one sheets of blue prints about 21x26, the first three showing the three floor plans of the new court-house and the position the proposed furniture should occupy when placed therein.   These plans were drawn to a scale.   The remaining eighteen sheets were drawings of various pieces of metallic and wooden furniture—counters, filing cases, metallic screen or grill work for the top of certain counters, roll and flat-top desks, shelving for record books and law books, tables, chairs, stools, mirrors, a couch, a settee, judge's desk

and platform, jury box and railing enclosing the bar, etc. These plans show the size and number of the compartments, the length, width and heighth of all counters, filing cases, shelving, tables, desks, etc.   They show a front, rear and end elevation of practically all of said furniture, and exhibit the general appearance of the same when completed.   The chairs, stools, couch and settee are designated by certain numbers.   Along with these plans were filed what were termed "instructions to bidders," of the following tenor:

### "Instructions to Bidders.

All bidders shall be governed and controlled by the following: It is desired by the county commissioners of Huntington county, Huntington, Indiana, to obtain for the new court-house in Huntington certain metallic furniture of a high grade in design and workmanship, in accordance with the attached schedule, for the several departments and rooms in the court-house, and equal in every respect to the best grade of metallic furniture and fixtures known, and to this end the bidders are requested to submit bids and base their proposals only upon first-class devices, materials, workmanship, ornamentation and quality of enameling.

Bidders will be required to submit with their bids a detailed specification giving a full description of the design, materials to be used and construction of all cases and pieces of furniture and devices connected with the metallic work, and among other things a description of the ornamentation, enamel work, and of the quality and process of making the same.   Also full and detailed specifications of the metallic work proposed.   These specifications, together with the general conditions, to become a part of the bid and contract upon which the work will be executed.

Bidders are required to examine the building and thoroughly to familiarize themselves with the intent and meaning of the same, and take all necessary measurements, and make their own estimates for the facilities and difficulties and expenses attending the execution of the work.

It will be assumed that proposals are based on a thorough understanding of all the conditions and requirements pertaining to the construction of the metallic work and its instalment in the building.

Bidders must submit with their proposal finished and unfinished samples of all the component parts of said metallic work, showing their capacity for carrying out the work in a manner satisfactory to the board of county commissioners and their authorized superintendent.

Bidders must use their own judgment as to what size samples or portions of the work they desire to submit, but at least one completely finished sample must be furnished.

The board reserves the right, should they deem fit, to retain in their possession all or any portion of the finished and unfinished samples or models submitted by the successful bidder, until the contract is completed and duly accepted by the county commissioners.

No bids will be considered unless they are in accordance with the plans on file in the county auditor's office, and samples are submitted with the bid as above called for.

The quality, design and workmanship, which includes everything going into said metallic work, devices, locks, rollers, curtains, enamel work, ornamental work, and everything connected with said steel work, will be taken into consideration, as well as the price, in awarding the contract.

All labor and materials of any kind whatsoever necessary for the construction of said metallic work and installing it in the building, including transportation, hoisting apparatus, staging or other devices, and all labor in placing it in position, and all other expenses connected with the putting of the same in the courthouse ready for use, shall be furnished by the contractor, and the cost of same included and fully covered by the contract price.

Any of the steel work under this contract which may become damaged during the installation in the building, or in transportation, or from any other cause, must be replaced by perfect material so as to make the whole design and all of the work first class and perfect in every detail, and the action of the county commissioners or their authorized superintendent will be final in this matter.

All of the metallic work necessary to be fastened in place must be carefully fastened to the surrounding work, and fastened in place in a careful and perfect manner, without injury to the metallic work itself, or to any portion of the building.

All of the metallic furniture must be of the best quality of metal work known and used for purposes of this character.

If any proposals or samples are submitted, and any part of the same is not manufactured by the party bidding, then the name of the manufacturer must be submitted with the bid and be subject to the approval of the board of county commissioners or its authorized superintendent.

All bids to be based on plans on file in the office of the county auditor of Huntington county, Huntington, Indiana.

The board reserves the right to reject any and all bids, and to accept any bid or any portion of same.

In addition to the metal furniture called for in instructions to bidders, it is desired by the county commissioners that each bidder make a bid on chairs in accordance with the attached schedule, which will be included and made a part of the total bid for the furniture.

Each bid must be accompanied by a certified check for fifty per cent of the amount of such bid, on some solvent bank, and payable to A. C. Fast, county treasurer of Huntington county, Huntington, Indiana, as a guarantee that if the bid is accepted a contract will be entered into and its performance properly secured.

In case the successful bidder fails to sign the contract and execute a satisfactory surety bond within ten days after receiving notice, the amount represented by said certified check shall be forfeited to the county. The amount of the certified check not so forfeited will be returned to the unsuccessful bidders, after the signing of the contract with the successful bidder and delivery of satisfactory bond, and the amount of the certified check deposited by the successful bidder will be returned when the contract is properly executed and satisfactory bond delivered."

The schedule before referred to states the various offices and rooms, and the amount and kind of furniture for each. All bids were accompanied by a certified check for the required amount, and samples of work were submitted. For the purpose of buying the furniture for said court-house the county council appropriated $20,000—$17,000 for the metallic, and $3,000 for the wooden furniture. It

also appears from the evidence that said plans and specifications were preperad under the direction of W. H. Atwood, agent for the Art Metal Construction Company, and the successful bidder. Atwood was a witness in this case, and admitted that the plans and specifications on which bids were asked did not require any particular grade of marble for the base of certain pieces of furniture; that the gauge of the steel to be used in the manufacture of the furniture was not shown, and that any gauge of steel would comply with the plans and specifications; that no standard of material was specified, and only by the general designs can it be determined what part is wood and what is steel. The plans show locks on certain pieces of furniture, but the kind or make is not given. In substance he testified that steel for the construction of furniture is bought by the pound; that No. 20 gauge steel is about one-half as thick as a No. 10, and weighs about one half as much, and the price per pound is the same; that it is manufactured in sheets of certain gauges, and the heavier it is the harder it is to form, requiring better machinery, and more dies; it is heavier and harder to handle, and the cost of a device made out of No. 10 gauge steel, would be more than double that of an article made of No. 20 gauge steel, and there is nothing in the original specifications from which to determine the weight of the material required. It also appears that each bidder filed with its bid specifications in accordance with the request in the "instructions to bidders," two of which were introduced in evidence. From an examination of these specifications it will be seen that the bidders came to different conclusions as to what was required by the so-called plans and specifications. For example, one specification calls for the counter fronts to be made of No. 10 gauge sheet steel, while another calls for No. 13 gauge steel plates, and each provides for a different construction. One bid is made upon a specification calling for the grill work to be of the design shown on plans, made of $\frac{1}{2}$x$\frac{1}{2}$ square steel rods, while another bid calls for grill work, as shown on

plans, to be constructed of bars of ⅜x⅜ solid bronze. And so the specifications continue to vary throughout all the material items upon which the proposals were submitted. It does not appear that any two bids were upon the same specifications, and yet each proposal was made upon the plans and specifications on file in the auditor's office.

The statute authorizes the board of commissioners to erect a court-house and make provision for certain public offices, and cause the same to be furnished. §§5989, 5990 Burns 1908, §5748 R. S. 1881, and Acts 1899, p. 467. Therefore, in purchasing the proposed furniture, the board was acting within its statutory authority. It is also well settled that the construction of a court-house and the furnishing of the same must be by contract, the statute pointing out the proceedings necessary for the board to take before it can legally enter into such agreement. §§5589-5592, 5594q1 Burns 1901, Acts 1899, p. 170, Acts 1901, p. 48, §§1-3, Acts 1899, p. 343, §37. Appellant insists that the power of the board to buy the proposed furniture is given only by the statute relating to the purchase of supplies for the county. Acts 1903, p. 318, §5953 Burns 1908. From a careful reading of this section we are not persuaded that the subject here in controversy comes within the class of supplies intended to be covered by that section, but it is a matter properly connected with and incident to the building of the new court-house, and as the board has express authority not only to build but to furnish the same, nevertheless this right or authority must be exercised in the manner provided by law. But if it be conceded that the proposed contract was to cover supplies within the purview of §5953, *supra,* it was the duty of the board to see that "exact specifications" were prepared and filed in the auditor's office covering the "materials or supplies" wanted before receiving bids. The board having complied with the law in this respect, as well as other provisions therein, if a satisfactory bid was received

it then became the duty of the board to let the contract "to the lowest and best responsible bidder." Section 5591, *supra,* provides that after the board has complied with certain statutory requirements it shall let the contract "to the lowest responsible bidder upon the terms of the notice mentioned and on the plans and specifications· so deposited, as in this act provided." Section 5594q1, *supra,* authorizes such board "to contract for the execution of any public undertaking," by first causing "to be prepared and placed on file in the office of the auditor complete and detailed specifications of" such undertaking. Therefore, as we see this case, it is not vitally material to the real question here involved, which of the sections just cited shall be declared as controlling, as all require that the bids shall be upon plans and specifications filed with the county auditor. The purchasing of furniture, such as here contemplated, is a matter which concerns in a more or less degree every taxpayer of Huntington county. It is strictly a public undertaking, and such taxpayers are entitled to have and to compel the board to comply strictly with the provisions of the law before placing the proposed burden upon them. One purpose of the statute ·in requiring "exact" or "complete and detailed specifications" is to furnish a basis for competitive bidding on the proposed undertaking. Without such basis bidders would be left to speculation and uncertainty in making bids, and the door of favoritism would be open to the board in awarding the contract. The evidence in the case at bar would warrant the finding that the plans and specifications submitted by the board, for lack of detail and specificness, are practically worthless as a basis for competitive bidding. And for this court to sanction the execution of a contract as against the findings the trial court may have made under the evidence disclosed by the record would amount practically to a nullification of the law for competitive bidding, and such ruling could not be supported by either reason or authority. Appellant contends that the

contract must be let "to the lowest and best bidder," and that the lowest bidder is not necessarily the best bidder. True, but how is the board to determine the lowest bid without some standard—in this case specifications—by which to measure such respective bids? In the case at bar the "plans" and "instructions to bidders" were the only plans and specifications filed with the auditor prior to the time of the bidding, and by such instructions bidders were required to submit with their bids detailed specifications of the design, material to be used, construction and ornamentation of the furniture, from information only to be obtained from the plans. The statute requires specifications as well as plans, and bids upon plans furnished by the board, and specifications furnished by the bidder are not made in compliance with the law in that regard, and the letting of a contract under such facts may be enjoined at the suit of a taxpayer.

6.

In support of the doctrine here announced and the conclusion reached, see *Mazet* v. *City of Pittsburg* (1890), 137 Pa. St. 548, 563, 20 Atl. 693; *Ertle* v. *Leary* (1896), 114 Cal. 238, 46 Pac. 1; *Fones Hardware Co.* v. *Erb* (1891), 54 Ark. 645, 17 S. W. 7, 13 L. R. A. 353; *Packard* v. *Hayes* (1902), 94 Md. 233, 51 Atl. 32; *Jenney* v. *City of Des Moines* (1897), 103 Iowa 347, 72 N. W. 550; *Gilbert* v. *United States* (1863), 1 Ct. Cl. 28, 34; 2 High, Injunctions (4th ed.), §1251; *Wrought Iron Bridge Co.* v. *Board, etc.* (1898), 19 Ind. App. 672.

Judgment affirmed.