# NESS v. BOARD OF COMMISSIONERS OF THE COUNTY OF MARSHALL ET AL.

[No. 22,195.   Filed April 5, 1912.   Rehearing denied
June 28, 1912.]

1. COUNTIES.— *Courthouse Repairs.— Bids.— Noncollusion Affidavits.—Statutes.*—The requirement of §5897 Burns 1908, Acts 1907 p. 580, providing that no bid for the building or repairing of any courthouse shall be received or entertained by the board of commissioners unless it is accompanied by the noncollusion affidavit of the bidder and each of his agents or representatives present at the time of filing such bid, cannot be waived, and bids for courthouse repairs submitted without such affidavits are not entitled to consideration although accompanied by noncollusion affidavits under §5959 Burns 1908, Acts 1899 p. 343, §42, which applies generally to matters within the jurisdiction of county councils and boards of commissioners. p. 225.

2. PUBLIC OFFICERS.—*Duty of Persons Dealing With.*—All persons dealing with public officers or those exercising statutory powers, are bound to ascertain for themselves that the law is complied with. p. 226.

3. COUNTIES.—*Courthouse Repairs.—Bids.—Noncollusion Affidavits.—Sufficiency.—Statutes.*—While §5897 Burns 1908, Acts 1907 p. 580, which requires all bids for courthouse repairs to be accompanied by the noncollusion affidavit of the bidder and each of his agents or representatives present at the time of filing such bid, should be strictly construed in the interest of the public to prevent collusion or fraud, a bid submitted thereunder is not defective for failure of the bidder to state in his affidavit that he had no agents or representatives present at the time of filing the same. p. 226.

4. COUNTIES.—*Courthouse Repairs.—Appropriation.—Specifications. —Powers of Commissioners.*—Where the appropriation made by the county council did not include an amount for the surveyor's office, and the specifications did not provide for decorating the court room the board of commissioners had no power to act with reference to such liens. pp. 227, 229.

5. COUNTIES.—*Courthouse Repairs.—Construction of Bid.*—Where general specifications for courthouse repairs provided that the general contract would include all the work shown on plans and specifications, with the exception of steam heating, plumbing and electric wiring, which were to be let under one contract and under separate specifications, and that separate bids were to be received on heating, wiring and plumbing, and on different items of the

general contract, the fact that a bidder added to his bid under the general specifications and to his bid on heating, plumbing and wiring, the words "conditional on being awarded all the work", did not render such bids and the contract based thereon invalid, since the condition added to the bid under the general contract meant no more than that the bidder should receive all the work under that contract, which was made up of a number of items, and the plumbing, heating and wiring, being the subject of one contract, but separated in the bidding, the conditions added to the bid thereunder referred to the work under the one contract. p. 227.

6.  COUNTIES.—*Contracts.—Power of Commissioners.—Presumptions.*—Where, in the matter of improving a courthouse, no appropriation had been made for the surveyor's office, and there were no specifications for decorating the court room, both the board of commissioners and the bidders for the work, were bound to know and presumptively did know that there could be no letting or contract for either of those matters. pp. 229, 233.

7.  COUNTIES.—*Courthouse Repairs.—Contracts.—Mutuality.*—Where in the matter of making repairs to a courthouse, the appropriation did not include an amount for the surveyor's office, and the specifications for such repairs did not provide for decorating the court room, but such items were bid on and included in the general contract for repair of the building, the bidding as to such items being illegal, and the contract as to them unenforceable by either party, rendered the entire contract void for lack of mutuality. p. 229.

8.  COUNTIES.—*Courthouse Repairs.—Contracts.—Validity.—Invalid in Part.*—Where a contract for courthouse repairs included items for which no bids could legally be received, or contract let, and which could not be separated from the other items included in the contract, the entire contract was thereby rendered void. p. 231.

9.  COUNTIES.—*Contracts.—Remedy of Taxpayer.—"Unreasonable Delay" in Bringing Action.*—Where, on the day a contract was let by the board of commissioners of a county, a taxpayer notified the board that he would resort to the courts, and within ten days thereafter he instituted the action, there was no unreasonable delay, especially since very little had been done under the contract. pp. 232, 237.

10.  ESTOPPEL.—*Estoppel Against Public.—Violation of Statute.*—There can be no estoppel against the public for the violation of a statute, even though no injury has resulted. p. 232.

11.  COUNTIES.—*Contracts.—Bids.—Discretion of Board of Commissioners.*—The board of county commissioners has some discretion in the matter of determining the lowest responsible bidder for work to be awarded under a contract. p. 235.

12. COUNTIES.—*Contracts.—Mutuality.—Waiver of Mutuality.*—The board of county commissioners cannot, as against a taxpayer or the public, waive the lack of mutuality in a contract. p. 235.

13. ESTOPPEL.—*Estoppel of Bidder for Public Work to Enjoin Contract.*—The fact that plaintiff in a taxpayer's action to enjoin the performance of an illegal contract, was an unsuccessful bidder for the work to be performed thereunder, cannot operate to estop him to maintain the action. p. 237.

From Marshall Circuit Court; *Moses B. Lairy,* Special Judge.

Action by Jacob S. Ness against the Board of Commissioners of the county of Marshall, and others. From a judgment for defendants, the plaintiff appeals. (Transferred from the Appellate Court under subd. 2, §1394 Burns 1908, Acts 1901 p. 565.) *Reversed.*

*Harley A. Logan* and *L. M. Lauer,* for appellant.

*Charles Kellison, Miller & Dowling* and *E. C. Martindale,* for appellees.

MYERS, J.—On January 23, 1909, the Board of Commissioners of the County of Marshall presented to the county council of said county a petition and estimate for the repair and remodeling of the courthouse of said county. In this petition it was stated, among other things, that the board proposed to prepare a room in the basement of the courthouse for the county surveyor. Acting on this petition, the county council made an appropriation as follows: "That there be appropriated out of the county funds of said county the following sums. * * * For repair of courthouse, including heating apparatus therefor and other necessary repairs, $15,000. * * * Said appropriation of $15,000 is to be used or expended on the courthouse as follows: Repairing or reroofing, remodeling tower with illuminating dial, painting outside and painting and decorating inside, repairing old floors or putting in new ones." On February 10, 1909, the county council made an order specifically authorizing the construction of three toilet rooms on the second floor, and for rewiring for electric lighting, under the ap-

propriation of $15,000. On June 5, said council made a further order, specifically authorizing the repair of the windows, under the appropriation of $15,000, provided the whole cost did not exceed the whole amount of the appropriation. Acting on these various appropriations, the board of commissioners on March 1, 1909, employed architects, and caused plans and specifications to be prepared for the repairs and changes that were to be made, except for decorating the court room, which plans and specifications were duly filed in the auditor's office, as required by law. On March 2, 1909, the board of commissioners of said county made an order fixing the date when the plans should be placed on file, and as a part of the order provided that "the advertisement shall state that in case the old boiler after test shall show that it is in good condition, no new boiler will be purchased, but, if after test is made and the boiler is shown not to be in good condition, then bids on new boiler will be considered." At a subsequent meeting of the board of commissioners, June 7 was fixed as the date on which bids would be received, and the order provided "that the board advertise for bids on the repair of the courthouse, as per the plans and specifications now on file, except the old boiler is to be used, and may be transferred to some other part of the basement." The published notice of the letting also stated: "Old boiler to be used." The specifications divided the work into two parts, which included under one, or the general contract, every thing shown on the plans and in the specifications, except the heating, plumbing and the electric wiring, which were to be bid on separately, but let as another contract. The general specifications embraced construction of a surveyor's room in the basement, as a part of the general contract. It was also provided that bidders in bidding on the general contract should "bid separately" on the specifications for constructing a surveyor's room, remodeling windows and decorating the court room; also bids in the alternative for wood and tile floor and wood and metal roofing. The bids

for heating, plumbing and electric wiring were separate. These instructions were set out in the published notice to bidders, which also stipulated that each bid should be accompanied by a noncollusion affidavit, as required by §5897 Burns 1908, Acts 1907 p. 580.

The auditor prepared separate blank forms, to be furnished possible bidders in four sets: One for the general work under the specifications and one each for the steam heating, for the electric wiring and for the plumbing.

There were several bidders on each item of the general contract, except the eighth, which was for decorating the court room. Appellee O'Keefe used the form furnished by the auditor, except as to the eighth item he added "on design to be submitted $300." After the general bid he added the words: "This bid and bond is filed conditional that I am awarded all of the work under the general specifications." He also bid on the wiring, plumbing and heating. At the close of each of his bids on wiring and plumbing, he added the words: "This bid conditional upon being awarded all of the work," and in his bid as to the heating he added the words: "Using old boiler and new valves." O'Keefe also filed a noncollusion affidavit, following §5897, *supra;* the other bidders filed affidavits conforming to §5959 Burns 1908, Acts 1899 p. 343, §42.

The bids of O'Keefe were accepted, and one contract entered into with him June 8, 1909, for all the work, and this action was brought June 18 by appellant, as a taxpayer, to enjoin the performance of the work under that contract, and from paying for it.

It is clear that none of the other bidders could have any standing, because of the failure to file affidavits under §5897, *supra,* as notified, instead of §5959, supra, as they did. Being a statutory requirement it could not be waived.

All persons dealing with public officers or those exercising

statutory powers, are bound to ascertain for themselves that the law is complied with. *State, ex rel.,* v. *Board, etc.* (1905), 165 Ind. 262, 74 N. E. 1091, 6 Ann. Cas. 468; *Board, etc.,* v. *Gillies* (1894), 138 Ind. 667, 38 N. E. 40; *Rissing* v. *City of Fort Wayne* (1894), 137 Ind. 427, 37 N. E. 328; *Lund* v. *Board, etc.* (1911), 47 Ind. App. 175, 93 N. E. 179; *Zorn* v. *Warren-Scharf, etc., Pav. Co.* (1908), 42 Ind. App. 213, 224, 84 N. E. 509; *Board, etc.,* v. *Pashong* (1908), 41 Ind. App. 69, 83 N. E. 383; *Silver, Burdett & Co.* v. *Indiana State Board, etc.* (1905), 35 Ind. App. 438, 72 N. E. 829; *Wrought Iron Bridge Co.* v. *Board, etc.* (1898), 19 Ind. App. 672, 48 N. E. 1050; Throop, Public Officers §§551, 556.

It is urged that O'Keefe's bid is defective, for the reason that it is claimed that it should also have contained the statement that he had no agent present at the bidding.

3. We think that position untenable. It will be seen that there is a difference between §5897 and §5959, *supra,* and while the proceeding is statutory, and one who seeks to avail himself of its provisions must bring himself within its terms, yet if he complies with the statute he has done all that he is called on to do. Section 5959, *supra,* applies generally to matters within the jurisdiction of county councils and boards of commissioners, but §5897, *supra,* a later act, applies specifically to repair of courthouses, and while a strict construction should be required in the interest of the public, and the securing of honest competition, and the prevention of collusion or fraud, §5897, *supra,* only requires affidavits by the "bidder and each of his agents or representatives present at the time of filing such bids."

The affidavit covers the case where there are no representatives or agents present at the time, and the bidder is present, by requiring the affidavit to show that the forbidden thing has not been done directly or indirectly. A bidder might be present himself and have agents or representatives present, none of whom had done the prohibited thing, but if an absent

agent or representative has done the prohibited thing, the affidavit required would make each of the parties making it guilty of perjury, by virtue of the act of the absent one, in the prohibition of the thing by such indirection, as well as by direction.

There was no appropriation for a surveyor's office, yet in the general specifications, and in the specifications for heating, the work on a surveyor's office was provided for, 4. and bid on under the general contract. There were no specifications for decorating the court room. No argument or citation of authority is necessary to show that neither could be undertaken, as being clearly in excess of the powers of the board.

It is next insisted that the words added by O'Keefe to his bid under the general specifications, and after his separate bid on wiring and plumbing, and, in his bid on 5. heating in which he added, "using old boiler and new valves", rendered the bids and contract invalid, as being contrary to the specifications, and as being an entire contract with no separate bids, for the alleged reason that the conditions added by him make each of his bids conditional on his being awarded the entire work bid on. It is manifest that the plain purpose of the statute is to place all bidders on an equality, and secure competition in fact. The general specifications provided that the "general contract will include all the work shown on the plans and in specifications, with the exception of the steam heating, plumbing and electric wiring. The steam heating, plumbing and electric wiring will be let under one contract and under separate specifications." Other provisions are that "separate bids" will be received on heating, wiring and plumbing, and on different items of the general contract.

The board of commissioners before advertising for bids determined to use the old boiler. The notice to bidders referred them to the plans and specifications, and gave notice that "bids will be received for the general contract, heating

(old boiler to be used), plumbing and electric wiring.''
Separate bids were made by items, and in the alternative as
to floors and roof. Separate bids were made for heating,
plumbing and wiring, without any itemization of parts. The
condition in the bid of O'Keefe under the general contract
added nothing to it, and made it no different from that of
any other bid, because it embraced but one subject, viz., the
items of the general contract, as one subject of the bid, made
by items, all of which were the same in each bid, but sepa-
rated in bidding, and meant no more than that he should
receive all the work under that contract, which was made up
of a number of items, and that construction of it is both rea-
sonable and consistent, if otherwise legal.

As to the plumbing, wiring and heating, they were to be
the subject of one contract, and they also were separated
in the bidding, so that adding to the bids for plumbing and
wiring the words, ''conditional upon being awarded all the
work'', evidently meant the work under the one contract for
plumbing, wiring and heating.

It is readily seen how this may have arisen. Instead of
preparing the forms so that one bid would embrace these
three subjects, by separate items, the forms were framed for
them separately, and in view of the provisions of the specifi-
cations, that they would be let under one contract, but ''bid
on separately'', it was not an unwise precaution, in view of
the possible construction, emphasized by the construction
here insisted on, that the bid should be so framed that
plumbing, heating and wiring should be the subject
of one contract, and therefore adding the words which
were added in nowise changed the bid, or the rela-
tion of the bidders to subjects bid on under that
proposed contract, or put the bidders on a different
basis of bidding. We are unable to perceive that
there is any connection between the bids under the two pro-
posed contracts. They are wholly independent. Under the
specifications the successful bidder under the general con-

tract was entitled to be awarded all the work required under the specifications to perform that contract. As to the plumbing, wiring and heating, the bids could not have been made the subject of separate contracts, but all these matters were the subjects of one contract. Neither O'Keefe nor any other bidder could have been required to enter into a contract to do any one of the three things independently of the other two subjects required to be performed under one contract; hence the added words in O'Keefe's bids are simply in recognition of that fact.

The action of the board of commissioners, however, cannot be upheld on other grounds. There was no appropriation for the surveyor's office, and there were no specifications for decorating the court room. There could, therefore, be no legal bidding for either of these matters. *State, ex rel., v. Board, etc., supra; Lund v. Board, etc., supra; Board, etc., v. Pashong, supra.* And these facts put the matter in such condition, as to bidding, as to render it possible to nullify the very object of the statute, and the possibility that this may be accomplished, aside from all question as to whether it is done, is sufficient to condemn it. The board and the bidders were bound to know that there could be no letting or contract for either of those matters, and presumptively did know it.

The practical result possible, then, is this: Knowing that no such contract could be made, nor such items contracted in the one general contract, the bidding is done on it as one contract, embracing at least two prohibited items, and O'Keefe's bid embraced both of them, and, in addition, is made conditional on his receiving the whole of the work, including those items. One of two things would necessarily be true: either he could refuse to accept or refuse to execute the contract with those two items in it, both because of the condition, and of its entirety or, bidders knowing that certain items bid on cannot be legally awarded, may frame bids accordingly, and may insert in bids, as to the

prohibited items, a proposition to do the work at a figure for less than its value, and put up the price bid on the authorized items, and when the unauthorized items are eliminated receive much more than the work is worth, or than they would otherwise bid; or, they may put a higher bid as to the unauthorized items, and a higher bid than they otherwise would on the authorized items and by eliminating the unauthorized items receive more than they should. In either event the municipality suffers. If the bidders all bid on the same idea, it might put them on an equality as between themselves, but the county has not received the benefit of competition as to subjects which are the just subjects of bidding and competition. It will hardly be contended that if O'Keefe had refused, after the contract was made, to execute it, that he could have been compelled to do so, or to perform the unprohibited parts, by reason of the indivisibility of the contract. Our conclusion is that the bidding and contract are indivisible ones in and of themselves, so far as the general contract goes, and that the public interest demands that they be so regarded to insure that equality and common ground in bidding which is the object of the statute. The case does not present the question of an innocent party, or where there may be a separation of the valid and invalid portions. It is said in 2 Beach, Contracts §1426, in discussing the subject of divisibility of contracts: ''A contract is wholly void if covenants in restraint of trade, which are illegal as against public policy, enter into and form a part of the entire consideration, and both parties are at fault as to those covenants.''

As we have pointed out, it is impossible to discover what part of or how far, the bids on the surveyor's office and for decorating the court room form a part of the entire consideration. See, also, 2 Beach, Contracts §§1422, 1425 and notes. O'Keefe was not bound to abide by his bid unless he received the work on the surveyor's office and for decorating the court room, independently of the condition in his bid, and he could not be forced to do so, nor could the county be

required to let the contract to him on account of the unauthorized items. It was therefore not mutual, neither was it divisible on the election of either party, and in the interest of the public ought not to be divisible by the election of both parties, and it is hardly necessary to suggest that in order to be valid the bid must be such that either party may enforce its performance. It was therefore void for lack of mutuality. *State, ex rel.,* v. *Cadwallader* (1909), 172 Ind. 619, 628, 87 N. E. 644, 89 N. E. 319; *Fowler Utilities Co.* v. *Gray* (1907), 168 Ind. 1, 79 N. E. 897, 7 L. R. A. (N. S.) 726, 120 Am. St. 344 and notes; Waterman, Spec. Performance §196. It was also void as an indivisible bid and contract. The reasoning applied to cases between individuals, applies with greater force to public officers and public contracts. *Cleveland, etc., R. Co.* v. *Closser* (1890), 126 Ind. 348, 26 N. E. 159, 22 Am. St. 593, 9 L. R. A. 754 and notes; *Hausman* v. *Nye* (1878), 62 Ind. 485, 30 Am. Rep. 199; *Smith* v. *Lewis* (1872), 40 Ind. 98; *Chicago, etc., R. Co.* v. *Southern Ind. R. Co.* (1906), 38 Ind. App. 234, 70 N. E. 843.

The principle is well stated in the first above cited case.

"The purpose to break down competition poisons the whole contract, and there is no antidote which will rescue it from legal death." That is precisely what would be permissible, if we were to uphold the contract.

The bid for plumbing, wiring and heating is not subject to the vice of the general contract, in so far as the bidding is concerned, but instead of following the declared intention and purpose to let two separate contracts, all the subjects of bids were embraced in one contract when finally reduced to writing, and while they may be severable from the general contract under ordinary circumstances, with the general contract stricken down, the contract for wiring, heating and plumbing could not be executed or complied with, and is so dependent on the execution of the general contract that the whole must fall together.

It is urged that appellant is estopped because of the delay in bringing the suit. On the day the contract was let, counsel for appellant was present and notified the board that if the law was as he believed it to be, he would resort to the courts. Very little was done under the contract prior to the suit being brought, which was within ten days, and was not unreasonable delay; besides, there can be no estoppel against the public from the violation of a statute, even though in the particular case no injury to the public has resulted, and appellees are in no situation to raise the question, where it is contrary to the expressed public policy, as in case of contracts in restraint of trade, or as monopolies, it is not necessary that they shall have so resulted; it is sufficient that they may do so. *State, ex rel.,* v. *Portland, etc., Oil Co.* (1899), 153 Ind. 483, 53 N. E. 1089, 74 Am. St. 314, 53 L. R. A. 413; *Knight & Jillson Co.* v. *Miller* (1909), 172 Ind. 27, 36, 87 N. E. 823, 18 Ann. Cas. 1146, and cases cited; *Fireman's Charitable Assn.* v. *Berghaus* (1858), 13 La. Ann. 209; Greenhood, Public Policy 115-126.

Cross-errors are assigned, the only one of which not waived is that of the sufficiency of the complaint. From what has been said, the sufficiency of the complaint abundantly appears.

The judgment of the court below is reversed, with instruction to grant a new trial, and for further proceedings not inconsistent with this opinion.

## ON PETITION FOR REHEARING.

Myers, J.—The able counsel for appellees have presented very earnest briefs on petition for a rehearing in this cause, and the importance of the question, coupled with the variety of opinions pronounced by the Appellate Court, has led us to a careful review of the cause.

It is urged that because we held that bidders presumptively knew that the work on the surveyor's office and dec-

oration of the court room could not be let, the bidders, by force of that presumption, bid on an equality.

Counsel overlook the fact that this statute is not for the benefit of contractors, but for the benefit of taxpayers, and while taxpayers might also be charged with the same notice, they are not on an equality. They cannot be present at all times, and they cannot know what may be sought to be done, but are entitled to have the statute complied with, the very object of the statute. In other words, appellees' position is that so long as the competition embraces unauthorized as well as authorized subjects, they are on an equality, and if the items are specified, then no harm can arise, when the proper bids are separated from the improper bids, because the bids would stand in competition on the proper subjects of the bidding. The argument is a specious one, but it has one inherent and controlling vice. The bid of O'Keefe was made conditional on his receiving all the

7. work under the general specifications and the general contract. If the bid had been made as the statute requires, and was otherwise unobjectionable, it would not have lacked mutuality, and would have been binding on both parties, if accepted, but by attaching the condition, the bid was taken out of the category of a statutory bid, and made a conditional bid. The bid itself, followed by the contract, made the bid and contract an indivisible one.

What might have been done under the item of decorating the court room, neither we nor the taxpayers could know. But it is urged that so long as there were specifications prepared for the surveyor's office, and the bids were within the appropriation of $15,000, it must be deemed that the construction of a surveyor's office was not deemed necessary to be the subject of an appropriation, and its omission an inadvertence. That may be true, and it may have been the subject of the utmost good faith, but all are agreed that an appropriation was necessary; hence that subject could not be embraced in the bidding under the appropriation as made,

though it embraced a sum sufficient to cover the cost of the surveyor's room.

But the bidder made it an express condition of his bid, that he should have $763 for constructing a surveyor's office, and $300 for decorating the court room, without any indication in what the latter should consist, and without any appropriation for the former, and it is therefore immaterial that the bid on those subjects is itemized, for it was accepted as made, and a contract entered into accordingly, so that as to a taxpayer the contract embraced those two void subjects, and having failed to follow the statute, the bid became like any other conditional bid, and the contractor could stand on his bid; whether he could collect if objection were made, is another question. When we said in the original opinion, that "it is impossible to discover what part or how far the bids on the surveyor's office and for decorating the court room form a part of the entire consideration," we were squarely within the record, for merely itemizing them does not take them out of the whole consideration. They are a part of the whole, expressly made so by the bid, and while they are separated on paper, they are combined as a whole by the bid and its acceptance, and necessarily enter into the whole consideration, but what part thereof we cannot know. What was to be obtained for the $300 bid for decorating the court room? Yet that $300 necessarily formed part of the whole consideration, as the bid was made and accepted. Appellee O'Keefe's bid on the surveyor's office was $69 below the next lowest bidder, and $132 below the next lowest bidder. But all the work under the general contract was clearly contemplated to be let to the lowest bidder on the whole of the subjects embraced in that contract, and not that it should be divided up, because on some parts one bidder was lower than another, yet with all the bidders bidding on the surveyor's office, one bid was $499.67 lower than O'Keefe, and deducting the latter's bid of $300 for decorating the court room, the bid was still $199.67 below

his. We do not mean to imply that the lowest bid must be received. The statute vests some discretion in the board as to the lowest responsible bidder. *Boseker* v. *Board, etc.* (1882), 88 Ind. 267; 11 Cyc. 482; *Interstate, etc., Pav. Co.* v. *Philadelphia* (1894), 164 Pa. St. 477, 30 Atl. 383; *Douglass* v. *Commonwealth* (1885), 108 Pa. St. 559; *Commonwealth, ex rel.,* v. *Mitchell* (1876), 82 Pa. St. 343; *People, ex rel.,* v. *Kent* (1896), 160 Ill. 655, 43 N. E. 760. But we point out the foregoing conditions as showing the possibilities in such manner of bidding, and it was because the bid was conditional, that up · to the time of acceptance it lacked mutuality, because it could not have been enforced by the board, but by acceptance by the board, it probably waived the question so far as it could do so, but it could not waive it as against the public, or a taxpayer, and the lack of mutuality still inheres in it, and it is immaterial that neither of the parties are asking to be relieved from it. Neither of them are in a position to ask its enforcement, or to waive it as against the public or the taxpayer. *State, ex rel.,* v. *Goldthait* (1909), 172 Ind. 210, 87 N. E. 133; *Rissing* v. *City of Fort Wayne* (1894), 137 Ind. 427, 37 N. E. 328; *Union School Tp.* v. *First Nat. Bank* (1885), 102 Ind. 464, 2 N. E. 194; *State, ex rel.,* v. *Benson* (1880), 70 Ind. 481; *State, ex rel.,* v. *Hauser* (1878), 63 Ind. 155; *Mayor, etc.,* v. *State, ex rel.* (1877), 57 Ind. 152; *Indiana Cent. Canal Co.* v. *State* (1876), 53 Ind. 575; *Caldwell* v. *Board, etc.* (1881), 80 Ind. 99; *Zuelly* v. *Casper* (1906), 37 Ind. App. 186, 76 N. E. 646; Throop, Public Officers §§21, 551.

It is urged that because the court held in the original opinion that the clause added by O'Keefe under his general bid added nothing to it, but was a mere separation of the items in bidding on that one contract, if the subjects of that bid had been proper, all that is necessary is to subtract from the whole price bid the unauthorized portions. The answer is that they were not deducted, but were contracted for; and

second, that even though the utmost good faith was observed, and these were matters of inadvertence, if we should approve of the course adopted it would lead to a train of evils, not because good faith may not be present, but because of inadvertence or mistake as to what is required. To put a case in addition to those suggested in the original opinion: Suppose improper items are embraced in a notice, and one bidder bids on the proper items and also the improper ones, and other bidders bid only on the proper ones, and suppose the latter are lower bidders than the former on the subjects they bid on, but irrespective of the improper items, as to one or more of which there is no guide whatever as to what shall be done, the improper items are embraced in the contract. Is it any answer to say that payment therefor may be refused or enjoined by a taxpayer? Who can tell how much of the unauthorized items went into the bid on the authorized ones?

Neither is it material in this case or in any other that all may have bid on all the items. The answer to it all is that even though they did, there was no power to receive such a bid. To sanction such a course, it would only be necessary, in case one item was authorized, to couple with it a dozen unauthorized items, and take bids on the whole.

Counsel proceed on the theory that it is a question between bidders, or between bidders and the board, whereas it is a question of the rights of taxpayers. Counsel in their argument and in the citation of authorities, somewhat extended, as to the rule of divisibility of contracts, and enforcement of those which are legal and separable, overlook the fact that the bid is specific in·tying the acceptance of the bid for the improper subjects to the proper ones, as a condition of doing the authorized work, thereby excluding the application of the rule.

It is insisted that as appellant was a bidder, he is estopped to maintain this action. As a bidder he might be, but he

is here as a taxpayer, and the taxpayers are entitled 3. to first consideration on the question in hand.

Laches on the part of appellant is urged. The suit was instituted within ten days after the contract was awarded, and the evidence of O'Keefe himself is that in that 9. time practically no money had been expended or liability incurred on account of the contract. There was no unreasonable delay in instituting the action; besides it may be questionable whether appellees are in any situation to raise the question.

But it is urged that, relying on the judgment below, and the varying changes wrought in the situation by the opinions promulgated in the case, appellee contractor has proceeded with the work until a considerable expenditure has been incurred by him. This appears by the brief of counsel, and we, of course, cannot be governed by the after-accruing results, and much as the condition he now finds himself in is to be regretted, we are in no situation to extend relief from conditions which he is at least equally responsible in producing.

It is also urged that we are in error in holding that the two biddings were invalid, because embraced in one memorandum. We do not so understand the opinion, or intend so to hold, but put the case on the ground that it seemed that the repairs on the buildings were of such character, and so coupled with the subjects of heating, wiring and plumbing, and so necessarily allied, that physical obstructions to doing the latter would be encountered by the former being stopped, and that the contractor ought not to be held to the one where the other is declared invalid. Whether we were in error in that respect, would not affect the question under the main contract; and if the other work could be done, or has been done, there is no such connection between the two as to render the plumbing, heating and wiring contract invalid, if it could physically and reasonably be performed and the contractor chose to perform it.

Finally it is urged that our opinion implies some degree of moral turpitude on the part of the board. We do not so understand, or mean to imply, but attribute the unfortunate condition to inadvertence, or lack of knowledge. But we are confronted with the question, not only as to what has been done, but what may be done, under appellees' insistence. *McVay* v. *Town of Lowell* (1908), 41 Ind. App. 627, 84 N. E. 778, and cases cited. When called on to determine a question in which the entire public is concerned, the question is not only what has been done, but what may be done under a contrary holding, for statutes of the character of the one before us, like contracts and combinations in restraint of trade, are prohibited, not only by reason of results produced, but in case they tend to that end (*Knight & Jillson Co.* v. *Miller* [1909], 172 Ind. 27, 87 N. E. 823, 18 Ann. Cas. 746) ; and it is just the possibility of that abuse which the statute was meant to correct, whether from proper or improper motives, that leads to no other conclusions than those adopted by the court, and the petition for a rehearing must be denied. .

NOTE.—Reported in 98 N. E. 33 and 98 N. E. 1002. See, also, under (1, 3) 1913 Cyc. Ann. 1219; (2) 29 Cyc. 1431; (4) 11 Cyc. 511; (6) 11 Cyc. 468; (7) 1913 Cyc. Ann. 1218; (10) 16 Cyc. 780; (11) 11 Cyc. 483; (13) 16 Cyc. 785. As to the right of a building contractor to recover for a substantial performance of his contract, see 134 Am. St. 678. As to the entirety of contracts, see 54 Am. Rep. 624; 59 Am. St. 277. As to who are responsible bidders and how they may enforce their rights, see 50 Am. St. 489. On the question of discretion in choosing between bidders for public contract, see 38 L. R. A. (N. S.) 653. As to the construction of "lowest responsible bidder" or a similar phrase in a statute providing for the letting of municipal contracts, see Ann. Cas. 1913A 500.