OGLESBY ET AL. *v.* CITY OF INDIANAPOLIS ET AL.

[No. 12,111. Filed October 6, 1925. Rehearing denied January 26, 1926. Transfer denied March 29, 1929.]

*Matson, Carter, Ross & McCord* and *Frederick E. Matson,* for appellants.

*James M. Ogden, Robbins, Weyl & Jewett, Jeffery, Townley, Wild, Campbell & Clark* and *Morris Townley,* for appellees.

McMAHAN, J.—Appellee city of Indianapolis, by its board of public works, proceeded in the way provided by statute to improve a certain street. A preliminary resolution was adopted, together with specifications for the work. These included general specifications, specifications for the foundation of the pavement, and also detailed specifications for five different kinds of wearing surface—wooden block, asphalt, asphaltic concrete, concrete and brick. After due notice and hearing thereon, the resolution was confirmed. Notice was given to contractors inviting bids. Appellee Marion County Construction Company, hereafter referred to as "con-

struction company," a company of known experience and responsibility, made two bids for the constructon of the pavement with an asphalt wearing surface. One of these bids, in which appellee proposed to use "oil asphalt," was for a total price of $5,866.10. Its other bid, in which it proposed to use "Trinidad lake asphalt," was for a total price of $6,329.30. The difference in cost of the pavement under these bids was forty cents per lineal foot.

Upon the statutory lapse of time after opening the bids, no petition having been filed by a majority of the property owners for any other kind of pavement, the board entered a final order for the improvement with "asphalt." No other contractor having made a bid for the improvement with asphalt, the board properly awarded the contract to the construction company, but, instead of awarding such contract upon its lowest bid, which was for a wearing surface made with oil asphalt, made the award and executed a contract upon its higher bid, which was for a wearing surface made with Trinidad lake asphalt.

Appellants, being property owners subject to assessment for cost of the work, within ten days after the execution of such contract, brought this action to enjoin performance of the contract upon the ground that, as the construction company was an equally satisfactory and responsible contractor as to each of its bids, and as each bid proposed to improve the street according to the plans and specifications therefor and according to said improvement resolution, the board of public works had no authority or power under the statute to let a contract for the higher price. A demurrer to this complaint having been sustained, the plaintiffs appeal.

Appellees contend that the determination of who was the "lowest and best bidder" was within the honest discretion of the board of public works; that, in making this

choice, the board had the right to take a great many things into consideration, including the quality of materials offered in connection with the respective bids: that, as fraud or bad faith is not alleged, it must be presumed that the board concluded in good faith that Trinidad lake asphalt was a more desirable material for the improvement in question than oil asphalt, and hence that the contractor's higher bid for Trinidad lake asphalt was a better bid than the lower bid for oil asphalt; and that such determination is final and conclusive.

Appellants, in support of their contention, say that both bids for the construction of the pavement with asphalt being made by the same contractor, the experience, record for efficiency, and general responsibility of this contractor were, of course, the same as to both of its bids; that the element of responsibility of the contractor, and all facts entering therein, were eliminated; that, in balancing the question as to which of the two bids was better, the qualifications of the contractor did not enter, so that the question of which was the lower bid was a mere matter of figures; that the bid in which the contractor proposed to use oil asphalt was the lower; that, since the contractor proposed in both bids fully to comply with the plans, specifications and drawings for the work and all requirements thereof, it was certain that, if let on the bid proposing to use oil asphalt, the work would be done by a responsible contractor at the lowest bid price, and completed in strict accordance with the plans and specifications; that the only possible question which the board of public works could and did take into consideration in letting the contract on the higher bid was the supposed difference in quality between oil asphalt and Trinidad lake asphalt as a paving material, and, to hold that the board had a right to do this is to hold that although particular and detailed specifications are adopted, which will insure the completion of a pave-

ment of a certain standard quality, the board may nevertheless, in the face of a lower bid by a responsible contractor, let the work on a higher bid because of a fancied idea that the contractor to whom the work is let is to use a material that will produce a pavement better than the specifications called for; that such an interpretation of the statute and policy of the law in this state on the subject of street improvements will destroy all true competition, open the way to favoritism, and constitute a menace to the public, the consequences of which cannot be measured.

*Boyd* v. *Murphy* (1891), 127 Ind. 174, 25 N. E. 702, cited by appellants, gives no support to their contentions. The question in that case related to the action of a city in letting a contract to one bidder in preference to another.

In *Zorn* v. *Warren Scharf, etc., Paving Co.* (1907), 42 Ind. App. 213, 84 N. E. 509, the bid of a certain contractor had been accepted. This contractor, however, failed to comply with the provisions of the statute and the city, for sufficient reasons, refused to enter into a contract with that contractor, and without readvertising for bids as required by the statute, let the contract to another and higher bidder on condition that this bidder would use Trinidad lake asphalt, which was supposed to be of a better quality and more expensive than that proposed to be used by the other contractor. It was there held that the provision of the statute requiring readvertising before reletting was mandatory. After holding that the matter of accepting or rejecting bids, and of the letting of the contract was purely administrative in character, depending entirely upon the discretion of the common council, and that the matter of giving notice inviting bids was jurisdictional, the court said: "The fact must be kept in view that the council was exercising a power affecting strictly individual rights, and that statutes of

this kind for competitive bidding are for the benefit of the property owner who must bear the expense of the improvement. In such cases, when a statute directs the performance of an act, which is for the benefit of the citizens or the public, it is to be construed as mandatory and not directory." The act of the city in that case was not only not in compliance with any statutory provision, but was in disregard of the mandatory provisions of the statute.

In *Board, etc.*, v. *Pashong* (1908), 41 Ind. App. 69, 83 N. E. 383, the commissioners had advertised for proposals for the furnishing of the furniture and fixtures for a new courthouse. The plans and specifications had been prepared by the bidder to whom the commissioners had awarded the contract, its bid being the lowest of the bids submitted. The plans and specifications were so indefinite as to be utterly worthless. So much so that they furnished no basis for competitive bidding. It was there held that it was the duty of the commissioners to see that "exact specifications" were made, so there could be competitive bidding, and that it was then its duty to let the contract "to the lowest and best responsible bidder."

In *Lane* v. *Board, etc.* (1893), 7 Ind. App. 625, 35 N. E. 28, the appellant had submitted a bid for the construction of a certain improvement. The contract had been awarded to another, and appellant sued the board for damages for refusing to award him the contract, claiming he was the lowest and best bidder. In holding that the appellant had no right of action, and in discussing the duty of the board in relation to letting the contract to the lowest and best bidder, it was said to be the imperative duty of the commissioners to enter into a contract with such bidder.

We fail to see how any of the above cases aids appellants in their contention that the board of public works

did not have the right, under the plans and specifications for the improvement of the street in question, to receive bids for both "oil asphalt" and "Trinidad lake asphalt." None of the cases relied on by appellant intimate that the authorities charged with the letting of the contract might not have had two or more sets of plans and specifications, and, after having received bids, have determined not only who was the lowest and best bidder, but the kind and character of materials to be furnished by the contractor, if the plans and specifications were sufficient and the kind of materials was the kind described in any one of the sets of plans and specifications which had been adopted.

The statute under which the improvement in the instant case was being made required that the board of public works should adopt and place on file not less than four sets of detailed specifications, each describing the wearing surface of a certain kind of the kinds of modern city pavements. §8710 Burns' Supp. 1921, Acts 1921 p. 324, §1. The board complied with this statute by adopting and placing on file five sets of specifications, the wearing surfaces described in the several specifications being wooden block, asphalt, asphaltic concrete, concrete and brick. The specifications provided for two kinds of wearing surfaces to be constructed with asphalt. The notices called for bids for the construction of the surface of the street with oil asphalt, with Trinidad lake asphalt, and with each of the other kinds of wearing surfaces set out in the specifications. The construction company submitted two bids, one for a wearing surface to be made with oil asphalt, and one for a wearing surface to be made with Trinidad lake asphalt. A majority of the property owners residing on the street to be improved, not having filed a petition within the time designated by the statute, requesting that the street be improved with a certain kind of the kinds of pavement for which bids had been

received, the board made a final order that the street should be constructed with a wearing surface of asphalt, and awarded the contract to said construction company upon its bid for Trinidad lake asphalt instead of upon its bid for oil asphalt.

Appellants, in effect, concede that if the proposal of the construction company for the completion of the street with oil asphalt had been submitted by a contractor other than said construction company, the board could have legally awarded the contract to the construction company on its proposal to use Trinidad lake asphalt, on the theory that it was the lowest and best bidder, viewed from its character and reputation as to reliability, without reference to the kind of asphalt it proposed to use. Appellants say this is necessarily so, in order that all bidders may be on an even basis, and in order to safeguard the pecuniary interests of the property owners by requiring competitive bidding.

In *McGuire* v. *City of Indianapolis* (1922), 192 Ind. 73, 135 N. E. 257, detailed plans and specifications for paving with wearing surfaces of asphalt, bituminous concrete, brick, or creosoted wooden brick had been adopted and placed on file. There were two sets of plans and specifications for paving with a wearing surface of asphalt. One set permitted the use of oil asphalt and the other of Trinidad lake asphalt. Bidders were required to designate which of the kinds of asphalt they proposed to use. Several bids were submitted offering to improve the street with Trinidad lake asphalt. Among the bids submitted was one offering to do the work using "Mexican asphalt," that being the trade name of a certain oil asphalt. At this point, a majority of the property owners interested and residing on the street to be improved filed a petition requesting that the wearing surface be constructed with Trinidad lake asphalt. The board of public works made an order designating asphalt

as the kind of material with which the street should be improved, and, disregarding the petition of the property owners, awarded the contract to a bidder who proposed to use Mexican or oil asphalt. Neither the opinion nor the record in that case discloses whether the bidder to whom the contract was awarded had submitted separate bids proposing to use either of the two kinds of asphalt, as in the instant case. The personnel of the bidders does not appear to have been involved in that case. It was not a question as to who was the "lowest and best bidder." The question was whether the property owners had a right to have the street improved with a particular kind of asphalt. There, as here, it was a contest between adherents of oil and Trinidad lake asphalt. The main difference between that case and the present one is that the adherents of "oil" won in that case, and lost in this.

The court, in discussing the rights of the property owners to control the "kind of pavement" and the materials used, after holding that the owners are given an opportunity to require the board to specify "some *kind of pavement* other than that originally designated" and that the board is required to adopt and file *"detailed specifications,"* at page 75, said: "So that the whole tenor of the act seems to be that the owners on the street may control the completed entity which is designated by the name of some 'modern city pavement.' But the details, specifications, and manner of producing that pavement are left to the board. It is the result and not the details which those on the street have a right to control. It is for the board to say by specifications what test the materials shall have. It is for the owners living on the street to say whether it shall be a brick, asphalt, creosoted block, or some other 'kind of modern city pavement.'" In other words, the court there held that a majority of the property owners had the right to require

that the wearing surface be made of asphalt, but the city authorities had the right to determine whether it should be constructed of Mexican or Trinidad lake asphalt.

Appellant also cites *Tousey* v. *City of Indianapolis* (1911), 175 Ind. 295, 94 N. E. 225, but, as was said in the McGuire case, *supra*, "The language of that opinion must be limited to the point which the court had before it for decision." When so limited, it has no application to the question now under consideration.

In *City of Connersville* v. *Merrill* (1895), 14 Ind. App. 303, 42 N. E. 1112, the common council of the city enacted an ordinance for the improvement of a sidewalk, using one of three kinds of stone enumerated therein, as should be determined by the common council on the reception of bids. In sustaining the action of the city, the court, at page 307, said: "The general character of the walk was to be of stone. Bids were invited on three different kinds of stone. When the bids were received, the cheapest stone sidewalk provided for in the ordinance was selected. In other words, the improvement was made of one kind of materials specified in the ordinance, and for the lowest bid that could be secured for either class of materials therein designated." See, also, *Indiana Truck Farm Co.* v. *Town of Schneider* (1920), 74 Ind. App. 24, 128 N. E. 617.

*City of Bluffton* v. *Miller* (1904), 33 Ind. App. 521, 70 N. E. 989, was decided under a statute which gave the property owners the right to object to the kind of pavement, and required the city to designate the kind of pavement before receiving bids, and permitted the city to advertise for and to receive bids on the particular kind of pavement so selected and designated.

It is conceded that the bid of the contractor to whom the contract was awarded was the lowest and best bid

for a wearing surface made of Trinidad lake asphalt. There is no charge that there was any corruption or fraud on the part of any one in awarding the contract and providing that the street should have a wearing surface made from Trinidad lake asphalt. And we hold the board of public works had the right to let the contract as it did, and to require that the street be constructed with Trinidad lake asphalt.

Judgment affirmed.